## CATSMAN v. CITY OF FLINT

1. MANDAMUS—APPEAL AND ERROR—STAY OF PROCEEDINGS—COURT RULES.

   Court rule granting automatic stay of proceedings if an appeal from the trial court order is taken within 20 days does not apply to orders of mandamus (GCR 1963, 530.1, 710.9).

2. MANDAMUS—APPEAL AND ERROR—STAY OF PROCEEDINGS—COURT RULES.

   The Court of Appeals and the Supreme Court have power to stay proceedings and to suspend injunctions during the pen-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 870.
[2–4] 17 Am Jur 2d, Contempt § 37.
[5] 17 Am Jur 2d, Contempt § 8.
[6–9] 17 Am Jur 2d, Contempt § 62 *et seq.*

dency of an appeal, but an automatic stay pending appeal of temporary injunctions designed to meet emergency situations would defeat the very purpose of such injunctions (GCR 1963, 530.6).

3. CONTEMPT—MANDAMUS—VIOLATION OF ORDER—REASONS.

Defendant city's contention on appeal that the trial court's finding that it was in contempt for failure to obey a mandamus issued by the court should be vacated because the "health hazard" on which the order was based did not in fact exist is without merit, for litigants are not entitled to second-guess the determination of a court by ignoring orders of mandamus deemed necessary by the court to remedy emergency situations.

4. CONTEMPT—MANDAMUS—NATURE OF ORDER—VIOLATION OF ORDER.

Defendant city's contention that the trial court's finding that it was in contempt for failure to obey a court order to connect apartment buildings to its sewage system should be vacated because the order, labeled a "temporary order to hook-up", was unusual and irregular is without merit because the court's order, whatever its label, was unambiguously and unmistakably an order of mandamus to the city to do a specific act.

5. CONTEMPT—ELEMENTS—WRONGFUL INTENT.

Intent to defy a court, or a spirit of defiance, is not an essential element of a finding of contempt where the essential purpose behind the contempt order is to compel obedience to the court's order.

6. CONTEMPT—POWER TO PUNISH.

The power of the courts to punish for contempt is essentially an inherent power and not the creation of statute.

7. CONTEMPT—PUNISHMENT—STATUTES.

Courts, in exercising their inherent power to punish for contempt, must act within the framework and limits of statutory enactments where the legislature has laid down prescriptions for the punishment of contempt.

8. CONTEMPT—PUNISHMENT—STATUTE.

Judgment of contempt which imposed on defendant city a fine of $250 for each day that it failed to obey an order of the court to connect its sewer system with apartment buildings *held,* improper as to the penalty imposed in view of statutory provision that fines for contempt may in no case exceed the sum of $250 (CLS 1961, § 600.1715).

9. CONTEMPT—PUNISHMENT—INDEMNIFICATION.

   A court may in its contempt judgment order the party in con-
   tempt to indemnify those who are damaged by the failure
   of the party in contempt to obey an order of the court (CLS
   1961, § 600.1721).

Appeal from Genesee, Elza H. Papp, J. Submit-
ted Division 2 June 5, 1968, at Lansing. (Docket
No. 3,653.) Decided August 26, 1969.

Complaint by Samuel M. Catsman and Alma Cats-
man, and Hill and Valley, a Michigan corporation,
against the City of Flint, a municipal corporation,
Genesee County, a municipal corporation, and the
Township of Flint, a municipal corporation, to com-
pel defendants to make sewer connections with
plaintiffs' apartment buildings. Mandamus issued
directing defendant City of Flint to connect plain-
tiffs' apartment buildings to its sewer system. De-
fendant City of Flint held in contempt for failure to
obey the order, and fined $250 per day of violation
and assessed $150 damages per day of violation. De-
fendant City of Flint appeals. Affirmed in part with
modifications in penalty, and remanded for further
proceedings.

*Charles A. Forrest, Jr.,* City Attorney, for de-
fendant City of Flint.

Before: LESINSKI, C. J., and R. B. BURNS and
FENLON,* JJ.

FENLON, J. The city of Flint appeals from the
order of the circuit court of Genesee County finding
the defendant city in contempt for failure to com-
ply with the mandamus of the court. The plaintiff

---

* Circuit judge, sitting on the Court of Appeals by assignment.

real estate developer sought from the court a temporary injunction ordering the city to hook up its sewer line to the sewer of plaintiff's newly completed and occupied apartment development.[1] The circuit court, confronted with a situation in which sewage was outpouring daily from plaintiff's occupied apartments into open pits, found a health hazard to exist and on March 27, 1967, issued the temporary injunction requested, ordering the city immediately to hook up its sewer line to the sewer of plaintiff's development, located across the city line in the township of Flint, Genesee County. The defendant city failed to comply with the order of the court, and on March 31, 1967, the court, after hearing, found the city in contempt. The court entered an order fining the city $250 for each day it failed to comply with the court's order, and the court further ordered the payment to the plaintiff corporation of damages in the amount of $150 per day, the cost of removing daily by truck the sewage that had poured into the open pits. This appeal both challenges the finding of contempt and, in attacking the validity of the penalty imposed, presents a novel question concerning the power of the circuit court to punish for contempt.

## I

### The Finding of Contempt

The defendant city urges that the contempt order should be nullified, claiming that the city attorney, Charles Forrest, entertained a good-faith belief that

---

[1] The plaintiff developer brought this action asking the court to declare in him a right to hook up the sewer of his apartment development to the city sewer line free of charge by virtue of certain covenants contained in deeds he took from his predecessor in title. This issue was settled before trial. What remains, therefore, is defendant's appeal from the court's order of contempt for failure to comply with the court's temporary injunction.

the operation of the court rule, GCR 1963, 530.1, granted the city an automatic stay of proceedings which entitled the city not to comply with the court's injunction for a period of 20 days. But this interpretation of the court rules is erroneous. GCR 1963, 710.9, specifically states that the automatic stay provisions of GCR 1963, 530.1 do not apply to orders of mandamus, and GCR 1963, 530.3 spells out that the suspension of injunctions depends on the discretion of the trial court. GCR 1963, 530.6 recognizes the power of this Court and the Supreme Court to stay proceedings[2] and to suspend injunctions during the pendency of an appeal, but here no such suspension was granted from the injunction entered by the Genesee circuit court. The rationale behind these rules is clear, for the automatic stay of temporary injunctions designed to meet emergency situations would defeat the very purpose of such injunctions. See the committee notes and authors' comments following GCR 1963, 530, in 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed). Absent a suspension of the injunction by the trial court or by this Court, the city was under a compulsion to obey the court's order. No provision of the court rules can justify the city's noncompliance with the injunction entered.

The city argues on appeal that the health hazard found by the trial court to exist, and which served as the basis for granting the temporary injunction, was "speculative". But the trial court's finding of the existence of the health hazard is sustained in the record by evidence which was never rebutted by the city. Most importantly, however, litigants are not entitled to second-guess determinations of courts by ignoring injunctions deemed necessary by

---

[2]. See GCR 1963, 808, for provisions concerning stay of proceedings in the Court of Appeals and the Supreme Court.

courts to remedy emergency situations. The authority of the judicial process would be rendered nugatory if parties before a court could vest in themselves a discretion in deciding whether to obey or to ignore an injunction of the court.

The city argues further as an excuse that the trial court's designation of the injunction, labeled a "temporary order to hook-up", was unusual and irregular, but this argument is without merit, for the court's order, whatever its label, was unambiguously and unmistakably a mandamus to the city to do a specific act: to hook up the city sewer line to the sewer of the plaintiff's apartment development.

The city attorney argues further in his behalf that he held in good faith his view that the operation of the court rules granted an automatic stay of the court's order, that such a good faith belief negatives any contumaciousness on his part, and that therefore the contempt order should be nullified. We have concluded that this defense is not valid, for where as here the essential purpose behind the contempt order is to compel obedience to the court's injunction, an intent to defy a court, or a spirit of defiance, is not an essential element of a finding of contempt. See the comment and the cases cited at 48 Mich L Rev 860: "The Intent Element in Contempt of Injunctions, Decrees, and Court Orders".

This case presents no necessity of attempting to differentiate between the elements of civil and criminal contempt, for clearly this contempt proceeding had no criminal aspect since here the contempt order served essentially the function of compelling obedience to the court's injunction.[3] The circuit

---

[3] See the helpful "Practice Commentary" concerning the contempt power by Carl S. Hawkins, following § 1701 of the Revised Judicature Act, in which Professor Hawkins expresses his opinion that "It is useless to generalize about the civil or criminal nature of contempt proceedings". MCLA § 600.1701.

court's finding of contempt, made after a full hearing, must be sustained.

## II

### *The Penalty Imposed*

The defendant city likewise challenges the validity of the penalty imposed by the court, and, in advancing its contentions, presents a question concerning the scope of a trial court's power to punish for contempt that is novel to the appellate courts of this jurisdiction.

The contempt order of the court stated:

"It is ordered that said defendant city of Flint pay a fine in the sum of $250 and that said fine shall continue each and every day that said city of Flint continues to disobey the order of the court. And said fine shall commence this date, March 31, 1967."

The question presented is whether the circuit court could, within the scope of § 1715 of the Revised Judicature Act, multiply the $250 maximum fine by the number of days the city was in contempt. RJA § 1715 (MCLA § 600.1715; Stat Ann 1962 Rev § 27A.1715), provides:

"(1) *Punishments for contempt may be by fine, which shall in no case exceed the sum of $250,* or by imprisonment, which except in those cases where the commitment is for the omission to perform an act or duty which is still within the power of the party to perform shall not exceed 30 days, or both, in the discretion of the court." (Emphasis supplied.)

It has been repeatedly stated by the Michigan Supreme Court[4] and by the courts of other juris-

---

[4] See generally the discussion of the nature of contempt proceedings with many cases cited at 17 CJS, Contempt, §§ 60–62(1), pp 137–160; 17 Am Jur 2d, Contempt, §§ 62–64, pp 62–65.

dictions[5] that the power to punish for contempt is essentially an inherent power and not the creature of statute. The Michigan Supreme Court in *In re Chadwick* (1896), 109 Mich 588, expressed well this concept of the contempt power as an essentially inherent power:

"The power to punish for contempt is inherent in, and as ancient as, courts themselves. It is essential to the proper administration of the law, to enable courts to enforce their orders, judgments, and decrees, and to preserve the confidence and respect of the people, without which the rights of the people cannot be maintained and enforced."

The Michigan legislature has over the years enacted numerous statutes prescribing and defining the power to punish for contempt, the most recent being the Revised Judicature Act of 1961.[6] The Michigan Supreme Court said of the early statutes:

"The statutes are in affirmation of the common-law power of courts to punish for contempts, and, while not attempting to curtail the power, they have regulated the mode of proceeding and prescribed what punishment may be inflicted." *Langdon* v. *Wayne Circuit Judges* (1889), 76 Mich 358, 367.

The Supreme Court gave its most recent consideration to the question concerning the way in which statutory enactments affect the inherent power of courts to punish for contempt in *Cross* v. *UAW Local No. 155 (AFL-CIO)* (1966), 377 Mich 202. In *Cross*, the trial judge found in contempt certain striking workers who had disobeyed his injunction

---

[5] For the history of these statutes, see the historical notes following § 1701 and § 1715 of the Revised Judicature Act, MCLA §§ 600.1701, 600.1715 (Stat Ann 1962 Rev §§ 27A.1701, 27A.1715).

[6] For a general discussion of the contempt power by the Michigan Supreme Court, see *Nichols* v. *Judge of Superior Court of Grand Rapids* (1902), 130 Mich 187; *In re Huff* (1958), 352 Mich 402, 415, 416.

against illegal picketing, designed to cool off a heated industrial dispute. The trial judge imposed on each individual defendant a monetary fine and a jail sentence, with a proviso for an additional jail sentence to be served if the fine was not paid. The Supreme Court held that the proviso for the additional jail sentence was outside the scope of the statute then in effect,[7] and vacated that portion of the sentence.

The court in *Cross* concluded that, even though a court's power to punish for contempt has been conceived of as inherent and not created by statute, where the legislature has laid down prescriptions for the punishment of contempt, courts must act within the framework and limits of the statutory enactment. Thus here we are confronted with the prescription of § 1715 of the Revised Judicature Act that: "Punishments for contempt may be by fine, which shall in no case exceed the sum of $250."

After having given careful consideration to this problem, we conclude that this specific language of § 1715 of the Revised Judicature Act limits the amount of a fine imposable for a single finding of contempt to the maximum of $250, and that therefore a court may not within the scope of this section calculate a fine by multiplying amounts of $250, as the court by its order here has done. We recognize the problem that this limited amount may not in given cases carry sufficient compulsion against a contumacious individual before the court. But at the same time we recognize the potential for abuse where the imposable fine is not subject to limitation.[8]

---

[7] CL 1948, § 605.20 (Stat Ann § 27.530), now brought forward in the Revised Judicature Act as CLS 1961, § 600.1715 (Stat Ann 1962 Rev § 27A.1715).

[8] See the comment: "Reiterated Contempt of Court" 62 Mich L Rev 1061.

We do not, of course, suggest that a court could not make a subsequent finding of a reiterated or continuing contempt and impose the maximum statutory fine for such subsequent contempt. But, following the rationale of the Supreme Court in *Cross* v. *UAW, supra,* we conclude that the power of the trial court to impose a fine for a single finding of contempt is subject to the limitation contained in the explicit language of the statute. Accordingly, the multiplying factor contained in the court's order must be deleted, and the fine imposed is reduced to the statutory maximum of $250.

Defendant further challenges the court's order to pay damages to the Hill and Valley Corporation. The court's order stated:

"It is further ordered that said defendant city of Flint shall pay damages to Hill and Valley, a Michigan corporation, in the amount of $150 per day, and payment of said damages shall continue each and every day that defendant continues to refuse to obey said order. And said damages shall commence this date, March 31, 1967."

Specific authority for such an award of damages is provided by § 1721 of the Revised Judicature Act (MCLA § 600.1721; Stat Ann 1967 Rev § 27A.1721):

"If the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant. The payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury."

The city of Flint's failure to comply with the court's order to hook up its sewer system to plaintiff's apartment development was clearly the direct

cause of the expense incurred by the plaintiff in hiring the use of the "honey dipper" trucks which, until the city finally complied with the court's order and hooked up its sewer on April 9, 1967, made daily trips to plaintiff's development to haul away the daily outpouring of sewage from plaintiff's apartment buildings. The sewage had poured out from the apartment buildings into open pits located on the development grounds. The court fixed the amount of damages at $150 per day, an amount determined according to the testimony of a witness at the show-cause hearing which resulted in the finding of contempt. Defendant challenges both the validity of the award and the determination of the amount; but § 1721 of the RJA, quoted above, gives explicit authority for the award, and on remand the circuit court may determine the exact amount of expense incurred by the plaintiff as a result of the defendant's failure to comply with the court's injunction.

Affirmed in part, reversed in part, and remanded to the circuit court for a reduction of the fine to the statutory maximum of $250 and a determination of the exact amount of damages caused to the plaintiff by the defendant's contempt. No costs, a public question being involved.

All concurred.