## CITY OF ANN ARBOR v DANISH NEWS CO

Docket Nos. 65391, 66991. Submitted May 1, 1984, at Lansing.—
Decided November 20, 1984. Leave to appeal applied for.

Plaintiff, City of Ann Arbor, brought an action in the Washtenaw
Circuit Court against the owner/operators of an adult book-
store in Ann Arbor seeking an injunction against the operation
of the bookstore by the defendants, Danish News Co., X.O.N.
Development Corporation, Executive Art Studio, Inc., Terry
Shoultes, and others. The Wildflour Community Bakery Co-
Operative, Women's Crisis Center, and others, were allowed to
intervene in the action as plaintiffs. The trial court, Ross W.
Campbell, J., issued an opinion and judgment for the plaintiff
finding that the bookstore was being operated in violation of
the Ann Arbor City Code. The court ordered the abatement of
the nuisance and that the defendants be permanently enjoined
and restrained from operating an adult bookstore in the city. In
Docket No. 65391, the defendants appeal from that injunctive
order. Following the trial court's order, one of the defendants'
principals, Terry Shoultes, and one of their attorneys, Noel
Lippman, were convicted of contempt for violation of the in-
junction. The court, Edward D. Deake, J., acting in the tempo-
rary absence of Patrick J. Conlin, J., found the defendants in
contempt and sentenced both Shoultes and Lippman to 19 days
in jail and a fine of $4,750, or, if the fine was not paid by the
19th day, they were to remain in jail for an additional six

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 82 Am Jur 2d, Zoning and Planning §§ 49, 50, 54, 57, 79.
    Validity and construction of statutory notice requirement prerequi-
    site to adoption or amendment of zoning ordinance or regulation.
    96 ALR2d 449.
[2] 82 Am Jur 2d, Zoning and Planning §§ 48, 79.
[3] 56 Am Jur 2d, Motions, Rules, and Orders § 29.
[4] 17 Am Jur 2d, Contempt § 35.
    42 Am Jur 2d, Injunctions § 357.
[5, 6] 17 Am Jur 2d, Contempt §§ 77, 78, 94.
[6] 17 Am Jur 2d, Contempt § 82.
[7] 17 Am Jur 2d, Contempt § 64.
[8, 10] 17 Am Jur 2d, Contempt §§ 105, 111.
[9] 17 Am Jur 2d, Contempt § 77.

months. In Docket No. 66991, the defendants appeal from that judgment of contempt. The Court of Appeals consolidated the cases on appeal. *Held:*

1. The City of Ann Arbor Ordinance upon which the injunctive order was based is void *ad initio* because it was never lawfully adopted. The opinion of the trial court which held the ordinance to be valid is in error since the ordinance was adopted in the absence of a statutorily mandated final report on the ordinance by the City Planning Commission. The ordinance is void by reason of the failure of the City Planning Commission to make a final report prior to the public hearing on the ordinance before the City Council.

2. A circuit court which issues an injunction has the power to punish disobedience of the order in a contempt proceeding even after an appeal is taken from the injunction. Thus, the circuit court did not lack the jurisdiction to conduct the contempt proceeding.

3. There was no denial of due process here since Shoultes and his attorney clearly believed from the pleadings and the factual context of the case that they were about to participate in a criminal contempt hearing.

4. There was no right to a jury trial on the contempt charges. This was a petty offense, punishable by a $250 fine or imprisonment for up to 30 days, or both. Since the penalty does not exceed six months imprisonment, criminal contempt in Michigan is defined as a "petty" offense, and a right to a jury trial for criminal contempts does not exist.

5. Attorney Lippman was denied fundamental due process in his conviction of criminal contempt and his conviction is vacated. He was not informed in advance of the hearing that he was to be called upon to defend himself in a contempt action.

6. Shoultes was not denied due process because the affidavit filed in regard to the contempt proceedings recited his presence on the bookstore's premises without specifically stating that he was a principal, since Shoultes had previously been identified in court records as the owner.

7. There was sufficient evidence in the record to justify a holding by the circuit court that, for the 19 days that the bookstore was opened after the issuance of the injunction, the store was operated in violation of the injunction since its principal activity was in the category proscribed by the ordinance. There is clear evidence that Shoultes, an owner and operator of the bookstore, knowingly violated the injunction. There was enough evidence before the circuit court judge for him to find Shoultes guilty of criminal contempt.

8. The alternative jail sentence of six months is not autho-

rized by the statute under which Shoultes was convicted and must be stricken.

9. There was only one finding of contempt in regard to Shoultes, therefore, his sentence could not exceed 30 days or $250 or both. His fine, therefore, is limited to $250 and his 19-day jail term is affirmed.

The judgment and order in Docket No. 65391 is reversed and the injunction is vacated. The judgment and order in Docket No. 66991 is reversed as to Lippman, and affirmed in part and reversed in part as to Shoultes.

1. ZONING — ORDINANCES — MUNICIPAL CORPORATIONS — PUBLIC HEARINGS — NOTICE.

Cities may provide by ordinance for the manner in which regulations and boundaries of districts or zones shall be determined and enforced or amended, supplemented, or changed; a public hearing in regard to the boundaries of districts and appropriate regulations to be enforced therein shall be held after 15 days' notice of the time and place of the hearing has been published by the legislative body of a city or village (MCL 125.584; MSA 5.2934).

2. ZONING — MUNICIPAL CORPORATIONS — CITY PLANNING COMMISSION — HEARINGS.

The legislative body of a city having a population of 25,000 or more may appoint a commission to recommend in the first instance the boundaries of districts and appropriate regulations to be enforced therein; the commission is required to make a tentative report and hold public hearings prior to filing a final report; the legislative body of a city having a population of 25,000 or more may not determine the boundaries of districts or impose regulations until after the final report of the commission and the hearing before the legislative body shall not take place until the commission's final report has been received; amendments may not be made until proposed amendments have been submitted to the commission and it has made its report to the legislative body; an ordinance adopted in the absence of the statutorily mandated report is void (MCL 125.584; MSA 5.2934).

3. MOTIONS AND ORDERS — INCORRECT ORDERS.

An order entered by a court of proper jurisdiction must be obeyed even if it is clearly incorrect.

4. INJUNCTIONS — CONTEMPT — APPEALS — COURT RULES.

A court which issues an injunction has the power to punish disobedience of the order in a contempt proceeding, even after

an appeal is taken from the injunction; a court, in an appeal from an interlocutory or final judgment granting, dissolving, or denying an injunction, may suspend, modify, restore or grant an injunction pending appeal, therefore, the suspension of an injunction depends upon the discretion of the trial court (GCR 1963, 530.3).

5. CONTEMPT — CRIMINAL CONTEMPT — CRIMINAL LAW — DUE PRO-
CESS.

A criminal contempt is a crime in the ordinary sense of the word, therefore, criminal contempt proceedings must comport with the standard of due process appliciable in all criminal proceed-ings; the defendant cannot be convicted of criminal contempt where the proceedings lacked any semblance of a criminal trial, the sentence had elements of both civil and criminal contempt and defendant could have reasonably expected that he was being held in civil contempt.

6. CONTEMPT — CRIMINAL CONTEMPT — CIVIL CONTEMPT — NOTICE.

A defendant charged with contempt is entitled to be informed as to whether the contempt proceedings filed against him are civil or criminal.

7. CONTEMPT — JURY TRIALS — CRIMINAL CONTEMPT — CIVIL CON-
TEMPT.

The Michigan Supreme Court has held that a party has no right to a jury trial in contempt proceedings, however, the United States Supreme Court has held that there is a constitutional right to a trial by jury for serious criminal contempts but that the guarantee of a jury trial applies neither to criminal con-tempts which are merely petty offenses nor to civil contempts.

8. CONTEMPT — CRIMINAL CONTEMPT — PETTY OFFENSES.

Criminal contempt in Michigan has been defined as "petty" on the grounds that the penalty does not exceed six months imprisonment (MCL 600.1715[1]; MSA 27A.1715[1]).

9. CRIMINAL LAW — TRIAL — WITNESSES — CRIMINAL CONTEMPT.

A witness who appears in court in a criminal case and whose testimony reveals the commission of a crime has the right to a separate trial and may not be convicted at the hearing where he has appeared as a witness; the same rule applies in regard to a criminal contempt proceeding.

10. CONTEMPT — MAXIMUM PENALTIES.

Punishments for contempt of court may be by fine, not exceeding $250, or by imprisonment, which except in those cases where

the commitment is for the omission to perform an act or duty which is still within the power of the party to perform shall not exceed 30 days, or both, in the discretion of the court; the maximum penalty for a petty criminal contempt is 30 days and/or $250 (MCL 600.1715[1]; MSA 27A.1715[1]).

*R. Bruce Laidlaw,* City Attorney, for the plaintiff.

*Gregory Fisher Lord,* for defendants in Docket No. 65391.

*Richard P. Zipser,* and *Norman L. Zemke,* for defendants in Docket No. 66991.

Before: SHEPHERD, P.J., and CYNAR and S. D. BORMAN,* JJ.

PER CURIAM. In the first of these two consolidated appeals (docket #65391) the defendants, owner/operators of an adult bookstore in Ann Arbor, appeal from an injunctive order of the Washtenaw County Circuit Court which has the alleged effect of putting them out of business. They claim that the city ordinance upon which the injunctive order was based is invalid because of improper procedures in its adoption and because of several constitutional infirmities. We reverse and vacate the injunction on the procedural grounds and, therefore, do not reach the constitutional issues. We find that the ordinance is void because it was never lawfully adopted.

In the second appeal (docket #66991), one of the defendants' principals (Shoultes) and one of their attorneys (Lippman) were convicted of contempt for violation of the injunction and were sentenced by the trial court for such alleged violations. We affirm as to Shoultes, but modify the sentence. We reverse as to Lippman.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

I

## THE ORDINANCE

Section 5:50 of Chapter 55 of Title V of the Code of the City of Ann Arbor was, according to the city, adopted on February 23, 1978. A trial exhibit contains a certification from the Deputy City Clerk that the ordinance was adopted on that date and remains in effect.

This portion of the zoning ordinance defines adult entertainment businesses, adult bookstores, adult motion picture theatres, adult mini motion picture theatres, and adult personal service businesses. The ordinance restricts the location of such businesses. Other sections of the ordinance regulate their operation. Since we hold the ordinance invalid on procedural grounds, we need not describe its provisions in detail except to the extent required by an analysis of the issues pertaining to the violation of the injunction in Section IV of this opinion.

II

## ADOPTION OF THE ORDINANCE

Cities may provide by ordinance for the manner in which "regulations and boundaries of districts or zones shall be determined and enforced or, amended, supplemented, or changed". MCL 125.584; MSA 5.2934. The foregoing section further provides that a public hearing shall be held after 15 days' notice of the time and place of the hearing has been published. In cities having a population of 25,000 or more, the legislative body of the city may appoint a commission to recommend in the first instance the boundaries of districts and appropriate regulations to be enforced

therein. The commission is required to make a tentative report and hold public hearings prior to filing a final report. In any city having a population of 25,000 or more, the legislative body may not determine the boundaries of districts or impose regulations until after the final report of the commission, and the hearing before the legislative body shall not take place until the final report of the commission has been received; nor may amendments be made until proposed amendments have been submitted to the commission and it has made its report to the legislative body.

This statute is the enabling act which authorizes cities to adopt zoning ordinances and amendments thereto. The City of Ann Arbor is a city with a population in excess of 25,000. It has a City Planning Commission and it is bound by the statute. In *Boron Oil Co v Southfield,* 18 Mich App 135; 170 NW2d 517 (1969), we held that where there has been a failure to comply with the requirements of the statute with regard to the holding of public hearings, any ordinance adopted in the absence of such compliance is void. In this case we hold that the language of the statute with regard to the filing of the final report of the City Planning Commission is equally mandatory and that violations of such provisions render an ordinance adopted in the absence of the statutorily mandated report void. To hold otherwise would permit city planning commissions to set a formal hearing, open and close the hearing without evaluating the ordinance and do nothing with regard to preparing or rendering a report, thereby permitting the legislative body of the city to proceed without the benefit of the statutorily mandated report from the commission.

In the instant case, a second amended complaint was filed by the city against defendant Shoultes. In

his answer Shoultes alleged as an affirmative defense that "[t]he ordinance in question is void for the reason that it was adopted contrary to the terms of the enabling acts of the State of Michigan". Although the answer was filed only three days prior to trial, the trial took place during the course of several non-continuous days over a period of several months, the last day of trial having been held some four months after the first. No motion was made to strike the answer for tardiness nor was the default of defendant Shoultes taken for failure to file a timely answer. The trial proceeded on the pleadings as they had been filed immediately prior to trial. We are satisfied that the city had adequate notice of the issue of the validity of the ordinance, *i.e.,* regarding its failure to comply with the enabling statute.

At the trial, an exhibit was admitted into evidence indicating that a City Planning Commission public hearing was held December 13, 1977, at which the following motion was made:

"The Ann Arbor City Planning Commission hereby recommends that the Mayor and City Council approve the Technical Amendment to Chapter 55, Section 5:50 of the Code of the City of Ann Arbor *[i.e.,* the relevant portions of the zoning ordinance in issue in this case]."

The staff of the City Planning Commission recommended approval. The minutes of the December 13 meeting indicate that a motion to table the matter was duly made and seconded. Commissioner Thomas said that he believed that the purpose of the ordinance was to protect the young from adult entertainment, but that the ordinance did not do that since it did not include clear descriptions. Another commissioner stated that she did not feel equipped to make revisions, and

suggested that "zoning be separated from the licensing regulation". Comments were made that the ordinance did not include all residential zones. After discussion, a vote on the motion to table indicated six votes in favor, none opposed, with two commissioners absent.

Thereafter, on February 23, 1978, the City Council held a meeting at which the "technical amendment to Chapter 55, section 5:50 regarding ordinance regulating adult entertainment" was adopted. The minutes of another City Planning Commission meeting, held five days later, indicate that there was no report of the commission on § 5:50.

This evidence was unrebutted and stands as the uncontroverted testimony that those portions of the ordinance which regulate defendants' business were adopted without the necessary report having been filed by the City Planning Commission. Accordingly, the ordinance is void. The opinion of the trial court which held it to be valid is in error.

Defendants also argue that the City of Ann Arbor violated that portion of MCL 125.584; MSA 5.2934 which requires 15 days notice of a hearing before the city legislative body. On appeal, defendants argue that answers to interrogatories indicate that there was only a ten-day period. Plaintiff responds that the answers to interrogatories were never properly admitted into evidence. We need not address this issue since we hold in this opinion that the ordinance is void by reason of the failure of the City Planning Commission to make a final report prior to the hearing before the City Council. Presumably, if a new ordinance is adopted, city officials will follow the notice procedures mandated by the statute. The circuit court could have taken note of the answers to interrogatories in its file. GCR 1963, 309.4. If a finding had been made that

the 15-day rule had been violated by the City Council, this would have been a further ground for invalidating the ordinance. To the extent that the ordinance was an attempt to remedy an important social problem, we are disturbed that the council failed to follow the proper procedures for enacting local legislation. These procedures are designed to protect the public against hastily adopted ordinances rushed through without giving the public time to react. Regardless of the merits of the legislation, we must hold ordinances void which violate these procedures.

We can no more approve of an ordinance adopted in the circumstances of this case than we could approve of legislation adopted by only one house of the Legislature. In the latter case, it is the Constitution which describes the legislative process; in the former it is the Legislature. We are required to follow the mandates of both.

### III

#### CONSTITUTIONAL AND EVIDENTIARY ISSUES

Defendants have raised several issues relating to the validity of the ordinance on constitutional grounds, *e.g.,* the presumption of invalidity of an ordinance regulating a First Amendment right, whether the ordinance is unconstitutionally vague in its language, and whether the limitations as to locations where adult businesses may be established are unconstitutionally restrictive. We need not address these issues since we find that the ordinance was void *ab initio* on procedural grounds. If a new ordinance is adopted, constitutional defects can be addressed in a proper manner by the City Planning Commission and the City Council. We note that the City Planning Commission had questions regarding the vagueness of the

ordinance. If a final report had been submitted to the City Council, such problems might very well have been addressed by the council and remedied. The requirement of a report from the City Planning Commission has a purpose. The consequences of the lack of such a report are made evident by the circumstances of this case.

Defendants also raise issues relating to whether their business properly fits within the definitions of the ordinance. We need not address those issues since we find the ordinance to be void. Although we do not address such issues in detail, they are of some relevance in determining whether Shoultes and his attorney, Lippman, can be found guilty of contempt for violating the injunction. To the extent that they relate to that issue they will be discussed below.

Similarly, since the ordinance is void *ab initio,* we need not address the issue raised by defendants that the city failed to present adequate evidence at trial to justify an infringement on First Amendment rights under the requirements of *Young v American Mini Theatres, Inc,* 427 US 50; 96 S Ct 2440; 49 L Ed 2d 310 (1976).

## IV

### VIOLATION OF THE INJUNCTION

*A. The Injunction*

The injunction of the Washtenaw County Circuit Court, dated June 28, 1982, provides:

"It is hereby ordered, that said nuisance be abated, and that the defendants Danish News Co., X.O.N. Development Corporation, Executive Art Studio, Inc., and Terry Shoultes, and their agents, employees, officers, servants, and persons in active concert or participation with them who receive notice of this order be and

hereby are permanently enjoined and restrained from operating an adult entertainment business, as defined by Section 5:50 of the Ann Arbor City Code, at 209 North Fourth Avenue, Ann Arbor, Michigan, or elsewhere within the said City of Ann Arbor, other than in a C2A zone and in compliance with said Code."

Although we have held the ordinance upon which the injunction was based to be void, nevertheless, an order entered by a court of proper jurisdiction must be obeyed even if it is clearly incorrect. *City of Troy v Holcomb,* 362 Mich 163; 106 NW2d 762 (1961). See also, *State Bar of Michigan v Cramer,* 399 Mich 116; 249 NW2d 1 (1976), "[p]ersons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect." *Cramer,* p 125, citing *Howat v Kansas,* 258 US 181; 42 S Ct 277; 66 L Ed 550 (1922).

### B. Jurisdiction of the Circuit Court

Defendant Shoultes argues that the circuit court lacked jurisdiction to hear the contempt issue since a claim of appeal had already been filed in the Court of Appeals and that, therefore, the circuit court was divested of jurisdiction. We hold that after an appeal is taken from an injunction, the court which issued the injunction has the power to punish disobedience of the order in a contempt proceeding.

GCR 1963, 530.3 provides that when an appeal is taken from an injunction, the court may suspend, modify, restore or grant an injunction pending appeal. This rule has been interpreted to mean that the suspension of an injunction depends upon the discretion of the trial court, *Catsman v Flint,* 18 Mich App 641; 171 NW2d 684 (1969). A Supreme Court decision which precedes the 1963

General Court Rules by many years held that, although the effect of an appeal is to bring a case into the appellate court, an injunction is not dissolved pending appeal and it may not be ignored. *Wilkinson v Dunkley-Williams Co,* 141 Mich 409; 104 NW 772 (1905).

"The automatic stay is not applicable in actions for injunctions, and in such actions the judgment, whether interlocutory or final, may be stayed only by order of court.

                    *  *  *

"* * * [GCR 1963, 530] recognizes that the trial court is often better equipped to formulate and enforce an order of the kind required to preserve the status quo." 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), pp 304-305.

## C. Initiation of Contempt Proceedings

The Ann Arbor City Attorney filed a "motion for arrest for contempt". The motion contained a prayer for the arrest of Shoultes for "his contemptuous disregard of the June 28, 1982, order of this Court set out in the attached affidavit". The affidavit of a Robert Flynn recites that on August 23, 1982, and August 24, 1982, the premises at 209 North Fourth Avenue in Ann Arbor were visited. Two signs were observed in the window which read, "Re-Opening In Violation Of Court Order" and "We will be reopening this store on August 23 at 12 o'clock noon". Shoultes was observed on the premises. The affiant viewed booths on the premises and was advised that "the peep shows would not be installed until the evening of August 24, 1982, and that within a few days the business would be selling a full line of the latest 'hard core' films". Affiant purchased five magazines and two books, viewed the covers and titles of other maga-

zines and books and concluded that the majority of the products available for purchase consisted of books and magazines which were "charactered by their emphasis on portrayals of human genitals and pubic regions or acts of human masturbation, sexual intercourse, or sodomy".

Based on the motion and affidavit, the court issued an order to Shoultes to show cause "why he should not be adjudged in contempt of this court as it is alleged". Following service of the order, Shoultes' attorney filed a response which referred to the proceedings as criminal in nature. The attorney also filed a demand for a jury trial.

### D. The Nature of the Contempt Proceedings

Defendants argue that the motion and order to show cause do not clearly identify the contempt proceedings as being criminal in nature and that, therefore, the circuit court was without authority to impose the criminal penalty of 19 days in jail and a fine of $250 for each of the 19 days. In view of the events prior to the trial on the contempt issue, we hold that the defendants had adequate notice that these proceedings were criminal in nature. *People v Johns,* 384 Mich 325; 183 NW2d 216 (1971), holds that criminal contempt is a crime in the ordinary sense and that the proceedings must comport with the standard of due process applicable in all criminal proceedings. A defendant cannot be found guilty of criminal contempt when the proceedings lacked any semblance of a criminal trial, the sentence had elements of both civil and criminal contempt and defendant could have reasonably expected that he was being held in civil contempt.

In the instant case, the court found defendants guilty of both civil and criminal contempt and, arguably, the pleadings could be interpreted to be

either civil or criminal in nature. However, prior to the hearing, the store had been closed, eliminating any possibility of civil contempt. The response filed by Shoultes' attorney characterized the proceedings as being criminal in nature. Moreover, defendants filed a demand for jury trial. There would be no right to a jury trial in any civil contempt proceeding. We held in *Fraternal Order of Police, Lodge #98 v Kalamazoo County*, 82 Mich App 312; 266 NW2d 805 (1978), that one who comes into court reasonably believing that he is about to be tried for civil contempt cannot be punished for criminal contempt at the conclusion of the hearing. A defendant charged with contempt is entitled to be informed as to whether the contempt proceedings filed against him are civil or criminal. In the instant case, where Shoultes and his counsel clearly believed from the pleadings and the factual context of the case that they were about to participate in a criminal contempt hearing, we believe that there was no denial of due process. However, we caution the bar that where contempt proceedings are initiated, the better practice would be to clearly define in the pleadings the nature of the relief requested. The failure of the city attorney to do so in this case required the above analysis which would not have been necessary had counsel proceeded in a less ambiguous fashion.

### E. Right to Jury Trial

Shoultes claimed that he was entitled to be tried on the contempt issue by a jury. The court denied him this right and proceeded to hear the matter as a bench trial. The Michigan Supreme Court has held that a party has no right to a jury trial in contempt proceedings. *Cross Co v UAW Local No 155 (AFL-CIO)*, 377 Mich 202; 139 NW2d 694

(1966). Nevertheless, the United States Supreme Court has held that there is a constitutional right to trial by jury for serious criminal contempts. *Bloom v Illinois,* 391 US 194; 88 S Ct 1477; 20 L Ed 2d 522 (1968). The *Bloom* decision apparently indicates that the guarantee of a jury trial applies neither to criminal contempts which are merely petty offenses nor to civil contempts.

In the instant case, we hold that this was a petty offense, punishable by a $250 fine or imprisonment for up to 30 days, or both, under MCL 600.1715(1); MSA 27A.1715(1). Criminal contempt in Michigan has been defined as "petty" on the grounds that the penalty does not exceed six months imprisonment. *People v Goodman,* 17 Mich App 175; 169 NW2d 120 (1969). Furthermore, in the instant case, the city attorney has conceded that the six-month penalty allowed in MCL 600.3820; MSA 27A.3820 does not apply in this case. Therefore, there was no right to a jury trial. We note again that the demand for a jury trial filed herein clearly evidences knowledge on the part of defendants and their attorney that this was a criminal contempt proceeding.

## F. Conviction of Attorney Lippman

Given the holdings of *Johns, supra,* and *Kalamazoo County, supra,* we conclude that Lippman was denied fundamental due process in his conviction of criminal contempt. The motion and order to show cause were not directed to Lippman and he was not informed in advance of the hearing that he was to be called upon to defend himself in a contempt action. He appeared as a witness on behalf of Shoultes and was found guilty of contempt by the court as a result of his testimony. If a witness appears in court in a criminal case and his testimony reveals the commission of a crime,

he has the right to a separate trial and may not be convicted at the hearing where he has appeared as a witness. Since a criminal contempt proceeding is a criminal case, the same rule applies. This was not a contempt committed in the court's presence. Rather, evidence of Lippman's alleged out-of-court contempt was revealed at Shoultes' trial. If the city wished to then proceed against Lippman, it should have initiated a new contempt proceeding. His conviction is vacated.

*G. Sufficiency of the Pleadings and Evidence as to Shoultes*

Shoultes argues that the pleadings do not clearly identify him as being in violation of the injunction. This case had proceeded in the Washtenaw County Circuit Court for a period of years prior to the allegations of contempt. The record was filled with evidence that Shoultes was an owner and operator of the store in question. The contempt pleadings do not state that Shoultes was an owner but merely indicate that Shoultes was present on the premises at the time the affiant appeared. Since Shoultes had previously been identified in court records as an owner, he was not denied due process as a result of the affidavit which recited his presence without specifically stating that he was a principal.

The ordinance defines adult entertainment businesses and adult bookstores as businesses or establishments having as their principal activity the sale of various items which are characterized by their emphasis on portrayal of human genitals and pubic regions or acts of human masturbation, sexual intercourse or sodomy. Although the testimony indicates that Shoultes appeared to have engaged in some redesign of his store after the injunction was issued, by bringing in merchandize

such as underwear, other articles of clothing and reading material which was sold in drug stores and bookstores, we find that there was sufficient evidence in the record to justify a holding by the circuit court that, for the 19 days that the bookstore was opened after the issuance of the injunction, the store was operated in violation of the injunction since its principal activity was in the category proscribed by the ordinance.

First, a sign in the window clearly stated that the bookstore was being reopened in violation of a court order. The court order enjoined reopening in violation of the ordinance. The ordinance prohibits operation of a store which has as its principal activity the sale of clearly defined pornographic materials. This is clear evidence that Shoultes, an owner and operator of the store, knowingly violated the injunction.

Other evidence indicated that the display area of the store prominently featured sexually explicit magazines, books and films, including items depicting matters prohibited in the ordinance. We have examined the exhibits and the testimony and we conclude that there was enough evidence before the circuit judge for him to find Shoultes guilty of criminal contempt.

## H. The Sentence of Shoultes

The statute under which Shoultes was convicted, MCL 600.1715(1); MSA 27A.1715(1), provides as follows:

"Punishments for contempt may be by fine, which shall in no case exceed the sum of $250.00 or by imprisonment, which except in those cases where the commitment is for the omission to perform an act or duty which is still within the power of the party to perform shall not exceed 30 days, or both, in the discretion of the court."

The court sentenced Shoultes to 19 days in jail, "that's one day in jail for each day that [you were] open", and a $250 fine for each of the 19 days. The court also indicated that if the fine were not paid by the 19th day, Shoultes would remain in jail for an additional six months.

The City of Ann Arbor concedes that the alternative jail sentence of six months is not authorized by the statute and must be stricken. Furthermore, under *Catsman v Flint, supra,* the fine of $250 per day for 19 days is suspect. There, the Court concluded that the statute limits the amount of a fine possible for a single finding of contempt to the maximum of $250.

Shoultes argues that, like the fine, the jail term cannot be multiplied by 19 days. However, the statute allows a sentence of up to 30 days and, therefore, a jail term of less than 30 days would be appropriate. The statement by the trial court that it was imposing a jail term of one day for each of the 19 days that the store remained open in violation of the injunction was, in our view, nothing more than a statement by the court of the reason that a 19-day term was imposed rather than the full 30 days which are permitted.

Shoultes is correct in that there was only one finding of contempt and that the sentence could not exceed 30 days or $250 or both. However, *Catsman, supra,* clearly establishes that the fine could not be more than a maximum of $250. If the City of Ann Arbor were correct that the fine could be $250 for each day, it would also follow that the jail term could be 30 days for each day the store remained open. If that were true, this would not be a petty criminal contempt and Shoultes would have been entitled to a jury trial. Since we have held that this was a petty criminal contempt, logic

compels us to conclude that both penalties provided for in the statute indicate a maximum penalty and that, therefore, the fine imposed upon Shoultes cannot exceed $250.

We, therefore, modify the sentence by eliminating the alternative six-month term imposed by the court, and by limiting the fine to $250. The 19-day jail term is affirmed.

The judgment and order in docket #65391 is reversed and the injunction is vacated.

The judgment and order in docket #66991 is reversed as to Lippman and affirmed in part and reversed in part as to Shoultes.