Terry Whitman SHOULTES, (87–1499/1575) Executive Art Studios, Inc., (87–1499), Plaintiffs–Appellants,

v.

R. Bruce LAIDLAW, et al., Defendants–Appellees.

Nos. 87–1499, 88–1575 and 88–1620.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 4, 1989.

Decided Sept. 18, 1989.

Franklin Richard Brussow, Brussow & Krause, Lansing, Mich., for plaintiffs-appellants.

R. Bruce Laidlaw, City Atty., Mel Laracey, Asst. City Atty., Robert E. Guenzel, Harris, Lax, Guenzel & Dew, Ann Arbor, Mich., for defendants-appellees.

Before MERRITT and KENNEDY, Circuit Judges, and WALINSKI, Senior District Judge.*

* The Honorable Nicholas J. Walinski, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

KENNEDY, Circuit Judge.

Appellant Terry Whitman Shoultes appeals from district court orders dismissing his petition for a writ of habeas corpus and granting summary judgment for appellees Laidlaw, *et al.,* in an action brought by appellant under 42 U.S.C. § 1983. Because appellant failed to exhaust his state remedies, we affirm the District Court's dismissal of appellant's habeas petition. The grant of summary judgment is also affirmed.

## I.

In 1978, the Ann Arbor City Council adopted a zoning ordinance restricting the location of "adult" bookstores and entertainment. About two years later, appellant opened an "adult" bookstore—the Danish News Co.—on a site at which such businesses were prohibited under the 1978 ordinance. Appellant was cited for code violations and fined. He continued to operate his business, and on June 28, 1982, the City obtained an injunction barring the use of the premises for the sale of "adult" material. Displaying a sign announcing his intention to operate "in violation of the Court order," appellant Shoultes reopened his business for 19 days. Found to be in civil and criminal contempt,[1] he was sentenced to 19 days in jail and fined $250 for each day.

Shoultes appealed to the Michigan Court of Appeals, which found the 1978 ordinance invalid because it had been adopted without the statutorily required final report from the city planning commission. *City of Ann Arbor v. Danish News Co.,* 139 Mich.App. 218, 223–35, 361 N.W.2d 772 (1984). The panel let stand the contempt citation—observing that "an order entered by a court

of proper jurisdiction must be obeyed even if it is clearly incorrect"—but it reduced the fine to $250 total. *Id.* at 229, 361 N.W.2d 772 (citations omitted).

Appellant reopened his store in late August or early September 1986. He had served only two days of his prior contempt sentence, and on September 12, 1986, Washtenaw County Circuit Judge Patrick Conlin issued an order requiring appellant to appear and serve the remaining 17 days.

In response, Shoultes filed a petition for a writ of habeas corpus. He also filed an action under 42 U.S.C. § 1983 against 22 persons, including the Ann Arbor City Council and Mayor, the Michigan Court of Appeals judges who heard his case, and Ann Arbor City Attorney R. Bruce Laidlaw. On April 20, 1987, the United States District Court dismissed the habeas petition and granted a motion to dismiss by all defendants except the City Council, the Mayor, the City of Ann Arbor, Laidlaw, and zoning administrator Gerald M. Scofield. Shoultes appealed.[2]

On May 10, 1988, the District Court granted summary judgment to the remaining defendants.[3] Shoultes appealed, and the appeal was consolidated with his appeal from the April 1987 judgment.

## II.

### A. Habeas Corpus

■ A federal habeas petitioner must exhaust his state remedies by fairly presenting the substance of each of his federal constitutional claims to the state courts. *Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). If a habeas petition contains both exhausted and unexhausted claims, the district court must dis-

---

1. While appellant now claims he lacked notice that the proceedings were criminal, the Michigan Court of Appeals found that "Shoultes and his counsel clearly believed from the pleadings and the factual context of the case that they were about to participate in a criminal contempt hearing." *City of Ann Arbor v. Danish News Co.,* 139 Mich.App. 218, 232, 361 N.W.2d 772 (1984). For example, Shoultes' counsel requested a jury trial, which is available only in criminal contempt proceedings.

2. The parties later stipulated to dismiss the appeal as to Washtenaw County Sheriff Ronald Schehil. Defendant George M. Gardner, who died several years before the filing of the complaint, was never served with process.

3. The District Court also dismissed without prejudice a permissive state-law counterclaim brought by Laidlaw, noting that the claim was unsupported by independent grounds of federal jurisdiction.

miss the petition, "leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims." *Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982).

■ The District Court found that appellant had presented a "mixed" petition of exhausted and unexhausted claims and accordingly dismissed the petition. The court observed that several of appellant's claims, including his contention that Judge Conlin's September 12, 1986 order violated the first amendment, have never been presented to the state courts. Appellant protests that his unexhausted claims are "derived from the same fact scenario" as the issues presented to the state courts. But "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts ..., or that a somewhat similar state-law claim was made." *Harless*, 459 U.S. at 6, 103 S.Ct. at 277 (citations omitted). A petitioner must "fairly present" his federal claims to the state courts before seeking a writ of habeas corpus.

Because appellant's habeas petition contained unexhausted claims, the District Court properly dismissed the petition.

## B. Section 1983

### The City Council and Mayor

■ Appellant's claims against former Mayor Belcher and ten former Council members are based solely on the fact that they voted for the 1978 zoning ordinance. The District Court held that these defendants were shielded by legislative immunity. We agree.

■ While the Supreme Court has declined to decide whether full legislative immunity extends to local law-making bodies, *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 404 n. 26, 99 S.Ct. 1171, 1178 n. 26, 59 L.Ed.2d 401 (1979), several Circuits have held that it does. *See, e.g., Rateree v. Rockett*, 852 F.2d 946, 949–50 (7th Cir.1988) (citing *Reed v. Village of Shorewood*, 704 F.2d 943,

952–53 (7th Cir.1983)); *Aitchison v. Raffiani*, 708 F.2d 96, 98–99 (3d Cir.1983); *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 829 (11th Cir.1982), *cert. denied*, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983); *Kuzinich v. Santa Clara County*, 689 F.2d 1345, 1350 (9th Cir.1982); *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1192–93 (5th Cir.1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *Bruce v. Riddle*, 631 F.2d 272, 279 (4th Cir.1980); *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 613–14 (8th Cir.1980). These courts have reasoned that the rationale which undergirds state legislative immunity applies with equal force at the local level. As Justice Frankfurter observed:

Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives.

*Tenney v. Brandhove*, 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951), *quoted in Lake Country*, 440 U.S. at 405, 99 S.Ct. at 1179. The Supreme Court has held that "[t]his reasoning is equally applicable to federal, state, and regional legislators," *id.*, and we see no reason why the same logic should not apply to local lawmakers. Indeed, the threat of liability might be an even greater deterrent to service at the local level, where the rewards of pay and prestige generally are less than at the federal or state level. Therefore, we join those Circuits which have held that local legislators are protected by absolute immunity when they act in their legislative capacities.

The Mayor and Council clearly were acting in their legislative capacities in passing the 1978 zoning ordinance. While the ordinance subsequently was held invalid, it was passed by a properly constituted legislative body, which was empowered to pass zoning regulations. Accordingly, we hold that the

118

Mayor and Council members are shielded from suit by absolute legislative immunity.

### Laidlaw

■ Appellant's claims against Laidlaw stem from his participation as City Attorney in both the initial nuisance action and the contempt proceedings.

Like the District Court, we hold that absolute prosecutorial immunity shields Laidlaw from liability for his participation in the criminal contempt proceedings. The decision to seek a contempt citation is among the core prosecutorial functions protected by the immunity recognized in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). *See, e.g., Hamill v. Wright*, 870 F.2d 1032, 1037 (5th Cir.1989); *Barr v. Abrams*, 641 F.Supp. 547, 549–50 (S.D.N.Y.1986); *Graham v. United States*, 528 F.Supp. 933, 939 (E.D. Pa.1981) ("A decision to enforce a summons or seek contempt citations is like a decision to press charges, and thus is within the scope of absolute immunity.").

■ Appellant argues that even if the decision to seek contempt citations was protected by prosecutorial immunity, the initial decision to seek an injunction under the 1978 ordinance was not, because it was a civil zoning action. This argument misapprehends the nature of prosecutorial immunity. Whether conduct is protected depends not on formalistic labels, but on the function it serves.

In other words, the critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process. This so-called functional analysis cannot be conducted mechanistically, but must occur with an eye toward the common law and public policy underpinnings of absolute immunity.

4. Section 5:106 of the zoning ordinance made it a misdemeanor to violate the ordinance.

5. Appellant's complaint also includes obscure allegations that zoning administrator Scofield improperly participated in Laidlaw's efforts to

*Joseph v. Patterson*, 795 F.2d 549, 554–55 (6th Cir.1986), *cert. denied*, 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987). Officials performing quasi-prosecutorial functions or "certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts." *Butz v. Economou*, 438 U.S. 478, 515, 98 S.Ct. 2894, 2915, 57 L.Ed.2d 895 (1978). *See also, Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir.1989) (absolute immunity extends to "quasi-prosecutorial functions"); *Meyers v. Contra Costa County Dept. of Social Servs.*, 812 F.2d 1154, 1157 (9th Cir.), *cert. denied*, 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987) (same).

In the present case, the City Attorney's office brought the injunction action to enforce a zoning ordinance which allowed for criminal penalties.[4] Appellant already had been fined pursuant to the ordinance, but he persisted in violating it. The injunction action, while nominally a civil action, was simply another attempt by the City Attorney to enforce a criminal provision. This conduct is at least "quasi-prosecutorial," and, therefore, appellee Laidlaw is protected by prosecutorial immunity. *Cf. Meade v. Grubbs*, 841 F.2d 1512, 1532 (10th Cir. 1988) (prosecutors' decision not to "initiate a *civil or criminal* complaint" protected by "absolute immunity") (emphasis added).[5]

### Judicial Immunity

■ Appellant's claims for damages against the Michigan Court of Appeals Judges and Washtenaw County Circuit Court Judges are all premised on purely judicial acts. These claims are barred by judicial immunity, because none of the defendant judges "acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 355–57, 98 S.Ct. 1099, 1104–

enforce the ordinance. Like the District Court, we conclude that Scofield is shielded by qualified immunity because he "could have, in light of the preexisting law, reasonably believed his action was lawful." *Danese v. Asman*, 875 F.2d 1239, 1242 (6th Cir.1989).

05, 55 L.Ed.2d 331 (1978) (citations omitted).[6]

### The City of Ann Arbor

As the District Court observed, appellant failed to allege that his injury resulted from an unconstitutional official policy or custom of the City of Ann Arbor. Therefore, appellant's claim against the City was properly dismissed. *See Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978).

### III.

For the foregoing reasons, we AFFIRM the District Court's orders denying appellant's petition for a writ of habeas corpus, dismissing appellant's claims against the City of Ann Arbor, and granting summary judgment to all other defendants.

---

**6.** Appellant argues on appeal that judicial immunity does not preclude injunctive relief, but this issue is not before us because the complaint failed to request an injunction.