*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF DEBLOCK.

---

DENNIS DEBLOCK, SR., VINCENZO
MANZELLA, Successor Personal Representative of
the ESTATE OF WAYNE GORDON DEBLOCK,
and KAREN MARTEN,

        Appellees,

v

KENNETH DEBLOCK,

        Appellant.

UNPUBLISHED
February 17, 2022

No.  355958
Macomb Probate Court
LC No.  2019-230571-DA

---

Before:  K. F. KELLY, P.J., and SAWYER and GADOLA, JJ.

PER CURIAM.

Appellant, Kenneth DeBlock (Kenneth), appeals as of right the trial court's order after evidentiary hearings regarding petitions for surcharge and attorney fees.  Although we find no errors with the core of the trial court's holding—that Kenneth was in contempt of court for failing to return assets of the Estate of Wayne Gordon Deblock ("Estate")—and, therefore affirm that holding, we vacate the portion of the trial court's order imposing the $8,400 fine for Kenneth's failure to return estate assets, and remand with instructions to reduce the fine to $7,500, the statutory maximum provided by MCL 600.1715.  We also find that the portion of the order directing Kenneth to pay two-thirds of the value of the goods sold on eBay is in error, and remand only for the ministerial task of correcting that amount from $6,608.05 to $6,608.95.

## I. BASIC FACTS AND PROCEDURAL BACKGROUND

This case concerns the trial court's imposition of fines against Kenneth for failing to return estate property in violation of a court order and for cursing during the evidentiary hearing that took place November 12, 2020, and November 13, 2020.  Wayne Gordon DeBlock, the decedent, passed away from cancer and left behind three living children: Kenneth, Karen Marten (Karen),

-1-

and Dennis DeBlock, Sr. (Dennis).[1]  In his will, the decedent left his entire estate to Kenneth, Karen, and Dennis "in equal shares."  The will also named Dennis as the personal representative of the Estate.

Immediately after the decedent's death in mid-March 2019, Kenneth went to the decedent's home, removed items from the house, and loaded the items into his and his ex-wife Linda DeBlock's (Linda) vehicles.  This occurred over the span of several days.  Eventually, Kenneth sought to remove Dennis as personal representative, citing Dennis's failure to "full identify" all of the decedent's property and his mismanagement of the estate.  Kenneth requested that Dennis and Karen be surcharged to cover the legal fees Kenneth had incurred.  After Kenneth's request to remove Dennis as personal representative and for a surcharge, the trial court entered an order that, in relevant part, required that all estate property that was removed from the home, flea market, or storage unit be returned to the personal representative and indicated failure to return any such property would result in a "surcharge."  In response to a second request for removal and surcharge, Dennis indicated that Kenneth had failed to return estate property and asserted Kenneth should be surcharged.  Although unsuccessful at first, Kenneth obtained Dennis's removal as personal representative and a successor personal representative, Vincenzo Manzella, was appointed.  Dennis also filed a petition to surcharge Kenneth.  Dennis's petition (along with a supplemental petition) alleged that Kenneth had taken several items from the decedent's house and presented evidence that he was selling the estate property on eBay.

The trial court scheduled a hearing on the requests to surcharge Dennis, Karen, and Kenneth.  Between adjournments of that hearing, Kenneth continued to disobey court orders to return estate property in his possession.  Thus, in late August 2020, the trial court entered an order that required Kenneth to return all estate property in his possession or face a $100-per-day fine until he returned all estate property in his possession.  There was no evidence that Kenneth returned any estate property in his possession.

An evidentiary hearing held on Zoom over two days in mid-November 2020 addressed several issues, including, in relevant part, ownership of estate property to be turned over by Kenneth, the various surcharge petitions, and any issues regarding sanctions against Kenneth for failure to comply with court orders.  After testimony from several witnesses, and argument from the parties, the trial court found, in relevant part, that the evidence demonstrated Kenneth took and kept various items of estate property in "flagrant and continual violation[]" of court orders.  Accordingly, the trial court ordered Kenneth to pay $8,400 for failing to return the estate property.  The trial court also ordered Kenneth to pay "two-thirds (2/3)" of $6,608.05[2] for property he sold on eBay, and $1,000 for his contempt of court from his use of profanity during the evidentiary hearing.  This appeal followed.

---

[1] The decedent's fourth child, Wayne G. DeBlock, Jr., passed away before the decedent and was survived by three children, who have not filed any documents in the trial court.

[2] The evidence at the evidentiary hearing established that this amount was $6,608.95, i.e., $0.90 more than the trial court's order on appeal indicates.  Thus, as noted earlier, on remand the trial court shall modify the amount for the property sold on eBay from $6,608.05 to $6,608.95.

## II. ANALYSIS

### A. SURCHARGE

Kenneth first argues that because he is an heir, not a fiduciary of the estate, the trial court abused its discretion when it "surcharged" him, an action that is only permissible against a fiduciary. Although we agree that Kenneth could not be "surcharged" because he was not a fiduciary, we are not bound by the parties' labels and, looking at the gravamen of the claim, the fines imposed against Kenneth were sanctions for his failure to return estate property in violation of court orders and compensation to Karen and Dennis for the property Kenneth took and sold on eBay.

This Court reviews de novo questions of statutory interpretation. *Hayford v Hayford*, 279 Mich App 324, 325-326; 760 NW2d 503 (2008). "The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature . . . ." *Tevis v Amex Assurance Co*, 283 Mich App 76, 81; 770 NW2d 16 (2009). "If the language is clear and unambiguous, this Court must enforce the statute as written. . . . Unless defined by statute, words and phrases are to be given their plain and ordinary meaning, and this Court may consult a dictionary to determine that meaning." *Tree City Props LLC v Perkey*, 327 Mich App 244, 247; 933 NW2d 704 (2019).

This Court reviews a trial court's contempt order for an abuse of discretion. *Porter v Porter*, 285 Mich App 450, 454; 776 NW2d 377 (2009). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Id*. at 455. A trial court's factual findings are reviewed for clear error, while questions of law are reviewed de novo. *Id*. "Clear error exists when this Court is left with the definite and firm conviction that a mistake was made." *In re Contempt of Henry*, 282 Mich App 656, 669; 765 NW2d 44 (2009).

Under MCL 700.1303, the probate court has "concurrent legal and equitable jurisdiction" to "[h]ear and decide a claim by or against a fiduciary or trustee for the return of property." Upon finding that a fiduciary violated a fiduciary duty, a probate court may "[c]ompel the fiduciary to redress a breach of duty by paying money, restoring property, or other means." MCL 700.1308(1)(c). Under MCL 700.1104(e), "fiduciary" is defined to "include[], but is not limited to, a personal representative, funeral representative, guardian, conservator, trustee, plenary guardian, partial guardian, and successor fiduciary." Thus, according to Kenneth, because he does not qualify as a fiduciary, the trial court improperly surcharged him.

Although we agree that the trial court could not "surcharge" Kenneth because he was not a fiduciary of the estate, see *id*., Kenneth is mistaken regarding the nature of the fine imposed against him. Kenneth properly brought a petition for a surcharge against Dennis who, at the time, was the personal representative of the estate. Although Dennis and Karen also filed petitions to "surcharge" Kenneth, that label ("surcharge") is, as Kenneth himself states, a misnomer.

In the context of a complaint, courts determine the "gravamen of a party's claim by reviewing the entire claim . . . ." *Attorney General v Merck Sharp & Dohme Corp*, 292 Mich App 1, 9-10; 807 NW2d 343 (2011). "It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007).

Moreover, courts are "not bound by the labels that parties attach to their claims." *Jahnke v Allen*, 308 Mich App 472, 475; 865 NW2d 49 (2014). A complaint is a pleading, MCR 2.110(A)(1), and a petition filed in the probate court constitutes a "pleading" under the Michigan Court Rules. MCR 5.001(B)(2). Thus, looking at the petition as a whole, the relief Dennis sought was to hold Kenneth accountable for his failure to return estate property and for his "fraud" related to taking items from the decedent's home and selling estate property on eBay. In this sense, Dennis sought to sanction Kenneth for misleading the trial court regarding the estate property in his possession and failing to return everything to the personal representative. There was, therefore, no error in assessing a fine against Kenneth.

## B. CONTEMPT

Kenneth also argues that the trial court's imposition of the $8,400 fine for his failure to return estate property was actually a criminal contempt fine, which required additional constitutional safeguards that he was not afforded. We disagree.

"[T]he primary purpose of the contempt power is to preserve the effectiveness and sustain the powers of the courts. Because the power to hold a party in contempt is so great, it carries with it the equally great responsibility to apply it judiciously and only when the contempt is clearly and unequivocally shown." *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 708; 624 NW2d 443 (2000) (citation and quotation marks omitted). "[T]here are three sanctions which may be available to a court to remedy or redress contemptuous behavior: (1) criminal punishment to vindicate the court's authority; (2) coercion, to force compliance with the order; and (3) compensatory relief to the complainant." *Cassidy v Cassidy*, 318 Mich App 463, 505; 899 NW2d 65 (2017) (quotation marks and citation omitted) (alteration in original).

### 1. Civil v Criminal Contempt

"Whether contempt is civil or criminal depends upon the character and purpose of the punishment imposed." *Cassidy*, 318 Mich App at 505 (quotation marks and citation omitted). "[W]here [the] defendant had the ability to pay, the contempt [is] civil as it [is] 'intended to coerce the defendant to do the thing referred by the order for the benefit of the complainant.' " *Id*., quoting *In re Contempt of Dougherty*, 429 Mich 81, 99; 413 NW2d 392 (1987). "Civil contempt proceedings seek compliance through the imposition of sanctions of indefinite duration, terminable upon the contemnor's compliance or inability to comply." *DeGeorge v Warheit*, 276 Mich App 587, 592; 741 NW2d 384 (2007). "Although civil sanctions may also have a punitive effect, the sanctions are primarily coercive to compel the contemnor to comply with the order." *Id*. "[A] finding of wilful disobedience of a court order is not necessary" when a contempt action is civil; it is sufficient that the contemnor "was neglectful or violated [his or her] duty to obey an order of the court." *In re Contempt of United Stationers Supply Co*, 239 Mich App 496, 501; 608 NW2d 105 (2000).

Criminal contempt, on the other hand, "is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." *In re Henry*, 282 Mich App at 666 (quotation marks and citations omitted). In imposing criminal contempt, the court's goal is to punish "past disobedient conduct by imposing an unconditional and definite sentence." *DeGeorge*, 276 Mich App at 592. The sanction imposed is punitive. *Id*. at 591.

"Differentiating between civil contempt and criminal contempt is not easy because both forms of contempt might result in the contemnor's being imprisoned for willfully failing to comply with an order of the court." *Porter*, 285 Mich App at 456. Indeed, "all contempt proceedings are referred to as 'quasi-criminal' or 'criminal in nature.'" *Id.* (quotation marks and citations omitted). Even so:

> The distinction between civil and criminal contempt is important because a criminal contempt proceeding requires some, but not all, of the due process safeguards of an ordinary criminal trial. A party charged with criminal contempt is presumed innocent, enjoys the right against self-incrimination, and the contempt must be proven beyond a reasonable doubt. Further, a party accused of criminal contempt must be informed of the nature of the charge against him or her and . . . given adequate opportunity to prepare a defense and to secure the assistance of counsel. In contrast, in a civil contempt proceeding, the accused must be accorded rudimentary due process, i.e., notice and an opportunity to present a defense, and the party seeking enforcement of the court's order bears the burden of proving by a preponderance of the evidence that the order was violated. [*Id.* at 456-457 (quotation marks and citations omitted).]

On appeal, Kenneth argues the trial court's imposition of the $8,400 fine against him in its December 11, 2020 order must be viewed as a sanction for criminal contempt because it was "issued after the coercive civil sanction was completed." Kenneth concedes, however, that the August 28, 2020 order, which imposed the $100-per-day fine for his failure to return estate property was a "coercive civil sanction" that, he claims, was converted to a criminal sanction. The $8,400 sanction imposed against Kenneth was the end result of the trial court's imposition of a $100-per-day fine for each day Kenneth failed to return the estate property. In other words, the trial court imposed the $100-per-day fine to compel compliance with the trial court's orders to return the estate property. See *DeGeorge*, 276 Mich App at 592 ("Civil contempt proceedings seek compliance through the imposition of sanctions of indefinite duration, terminable upon the contemnor's compliance or inability to comply."). Therefore, we reject the argument that the $8,400 sanction constituted criminal contempt.

### 2. Compensation For Estate Property

To the extent Kenneth's argument challenges the $4,405.37 fine imposed to compensate Dennis and Karen for the estate property Kenneth sold on eBay, "[a] court may issue an order to pay compensation for actual loss or injury caused by a contemnor's misconduct." *In re Contempt of United Stationers Supply Co*, 239 Mich App at 500. Compensatory civil contempt sanctions are codified in MCL 600.1721, which states:

> If the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant. The payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury.

-5-

The trial court found that the evidence established Kenneth sold estate property valued at $6,608.95 on eBay. Kenneth claims there was only speculative evidence regarding the amount of estate property sold on eBay. We disagree. Dennis testified that he had "proof" Kenneth continued selling estate assets after the February 26, 2020 order, citing "evidence from eBay." Specifically, Dennis found Kenneth's eBay account and discovered Kenneth listed estate property on eBay, including various car parts. According to Dennis, eBay responded to a subpoena related to Kenneth's account and provided information showing that between January 29, 2019 and July 23, 2020, Kenneth had 2,446 listings on eBay, with a total value of $39,478.18. The list Kenneth provided, however, only included 90 listings valued at $1,430.65 (the prices for 43 of those 90 listings were removed). Dennis also testified that Kenneth had listed estate property on eBay after July 23, 2020. Dennis stated that the "total listings of estate personal property is [549]," meaning Kenneth had "mixed in personal property with estate property" in his eBay listings. Dennis stated that the "total value of personal property from the estate" Kenneth listed on eBay was $33,107.78. Between January 29, 2019 and the time of the evidentiary hearing, Kenneth had sold 153 items of estate property. And between January 29, 2019 and August 22, 2020, Kenneth realized $6,608.95 from the sale of estate property.

To the extent the trial court's order states that the amount owed was $6,608.05 ($0.90 short of what the evidence showed at the evidentiary hearing and its findings at the hearing), that finding was erroneous and, on remand, the trial court is ordered to modify the amount to $6,608.95, meaning Kenneth must pay 2/3 of that adjusted value, or $4,405.97. But Kenneth's claim, that this evidence was speculative, is without merit. Karen and Dennis both repeatedly testified that Kenneth took items from the estate and sold them on eBay and, as stated, Dennis provided detailed testimony about Kenneth's eBay account and items sold on it. Accordingly, although the amount owed by Kenneth was $0.90 short of what the evidence demonstrated he owed, the ultimate finding that he sold estate property on eBay and had to compensate Karen and Dennis for doing so was not erroneous.

3. Statutory Maximum for Contempt

Kenneth also argues the trial court abused its discretion by imposing a contempt fine that exceeded the statutory maximum. We agree.

MCL 600.1715, which governs penalties for contempt, states, in relevant part, that "[e]xcept as otherwise provided by law, punishment for contempt may be a fine of not more than $7,500.00 . . . ." In *Catsman v Flint*, 18 Mich App 641, 649; 171 NW2d 684 (1969),[3] this Court concluded that, under a previous version of MCL 600.1715, which had a maximum fine of $250 for a finding of contempt, the language of the statute "limit[ed] the amount of a fine imposable for a *single finding of contempt* to the maximum of $250 . . . ." See also *Ann Arbor v Danish News Co*, 139 Mich App 218, 236-237; 361 NW2d 772 (1984) (finding that with only one finding of contempt, the sentence could not exceed the statutory limit of 30 days of imprisonment or $250 or both, and "the fine could not be more than a maximum of $250."). We further stated that "the

---

[3] Cases from this Court published before November 1, 1990, are not binding but may be considered for their persuasive value. *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

power of the trial court to impose a fine for a single finding of contempt is subject to the limitation contained in the explicit language of the statute." *Catsman*, 18 Mich App at 650.

When the trial court found Kenneth failed to comply with the August 28, 2020 order by not returning estate property, it entered an order that "Kenneth shall pay a fine of $8,400.00 for his failure to return estate property." According to Kimberly Lubinski, Dennis's attorney, and Manzella, the successor personal representative, as well as Karen's trial brief, the $8,400 sanction against Kenneth was for the 84 days between "August 20, 2020" and "November 12, 2020," the first day of the evidentiary hearing, multiplied by the $100 daily fine for each day that he failed to return estate property, as articulated in the August 28, 2020 order.

It is not clear why Lubinski, Manzella, and Karen relied on August 20, 2020, as the initial date for calculation of the fine related to Kenneth's failure to return estate property when the order related to this issue was not entered until August 28, 2020. Nor is it clear why they selected November 12, 2020, as opposed to November 13, 2020 (the second day of the evidentiary hearing), as the end date for the calculation. There are 76 days between August 28, 2020 and November 12, 2020. Thus, it appears from the record that the amount of the fine imposed against Kenneth for failure to return estate property was miscalculated and, based on the $100 daily fine and 76 days between August 28, 2020 and November 12, 2020, should have been $7,600, not $8,400. Regardless, whether $8,400 or $7,600, the fine imposed against Kenneth would still have been above the statutory maximum in MCL 600.1715.

The trial court was limited to imposing a maximum fine of $7,500 for each finding of contempt. Here, that was one. Although the statutory limit in MCL 600.1715 was increased from $250 to $7,500, the reasoning of *Catsman* and *Danish News Co* still stands. That is, the trial court was restricted to imposing a maximum fine of $7,500 per finding of contempt. With respect to Kenneth's failure to comply with the August 28, 2020 order by not returning estate property, and pursuant to the trial court's final order, was only one fine for "failure to return estate property." In *In re Contempt of Johnson*, 165 Mich App 422, 428-429; 419 NW2d 419 (1988), we rejected the argument that the trial court is authorized to impose a fine up to the statutory maximum for each day the court's order is violated.[4] Instead, finding the language of the statute unambiguous, we concluded that, in no case, shall the punishment for contempt exceed the statutory maximum. *Id*. Accordingly, the trial court's finding of contempt regarding Kenneth's failure to return estate property was subject to the $7,500 limit in MCL 600.1715(1). The trial court, therefore, abused its discretion when it imposed a fine of $8,400 for Kenneth's failure to return the estate property. But because the fine itself was justified—Kenneth indeed failed to comply with the trial court's August 28, 2020 order to return estate property in his possession or control—we order the court on remand to reduce the fine to the statutory maximum of $7,500. See *Catsman*, 18 Mich App at 650 (reducing fine imposed to statutory maximum of $250 then in effect).

4. Contempt Fine for Profanity

---

[4] Although published before November 1, 1990, we find the reasoning in *In re Johnson* persuasive. *In re Stillwell Trust*, 299 Mich App at 299 n 1.

Kenneth argues the trial court abused its discretion when it fined him $1,000 for cursing in court because, although it could order him to not swear in court, it could not impose the fine without first providing him specific procedural safeguards. We disagree.

"[T]rial courts possess the inherent authority to sanction litigants and their counsel . . . ." *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006). "If the contemptuous behavior occurs in front of the court, i.e., it is 'direct' contempt, there is no need for a separate hearing before the court imposes any proper sanctions because 'all facts necessary to a finding of contempt are within the knowledge of the judge.' " *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App at 712 (citation omitted); see also MCL 600.1711(1) ("When any contempt is committed in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both."). This is true even in the context of direct, criminal contempt, *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App at 714, as long as the sanction imposed is not a "serious criminal penalty" involving imprisonment for more than six months, *Int'l Union, United Mine Workers of America v Bagwell*, 512 US 821, 826-827, 833; 114 S Ct 2552; 129 L Ed 2d 642 (1994).

On the first day of the evidentiary hearing, Kenneth used various swearwords and other vulgar language. Specifically, Kenneth used the words "fricking" and "s**t," and also referenced the fact that he had to "pee." After several of these outbursts, the trial court warned Kenneth to watch his "vernacular." At one point, Kenneth acknowledged the trial court's warnings, stating, "g[o]t it" and, "I hear you, ma'am."

On the following day of the hearings, Kenneth stated he was "upset that he [Dennis] was reinstated as PR and he came without nobody [sic]. I was told that the PR was coming, and I was upset that him and the [sic], at him and Al and Karen got up and Al started his [s**t] on me. And yes, I was upset." The trial court interjected, stating: "Mr. DeBlock, I'm going to stop you right now. The next time you use a curse word in my courtroom I'm fining you $500." When Kenneth indicated he did not "even remember saying it," the trial court responded, stating, "Well I do, and I remember several from yesterday. If you do it again I'm charging you $500." Almost immediately after this, Kenneth was asked why he was upset when he specifically wanted "all those people to be there" and "there wasn't [sic] anything from the estate in the garage . . . ." Kenneth stated: "I just told you why, to pit me against my brother. And if it wasn't for my son I would have took him down that day. I was pissed. Yes, I'm pissed. Look what you people are do—[.]" At that point, the trial court again interjected, stating, "All right. That's $1,000 right there in one sentence, Mr. DeBlock. You owe me $1,000 for contempt of court." Kenneth did not object to the trial court's finding of contempt or the imposition of the $1,000 fine.

Kenneth argues that although the trial court could order Kenneth not to curse in court, he had to be provided certain procedural safeguards because this constituted criminal contempt. As an initial matter, the contempt at issue here was "direct" contempt because Kenneth's contemptuous behavior—using inappropriate language—occurred directly in front of the trial court. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App at 712; see also MCL 600.1711(1). Thus, because all of the facts necessary for a finding of contempt were within the knowledge of the trial court, no separate hearing was necessary. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 712.

The trial court did not abuse its discretion in imposing the $1,000 fine against Kenneth. Kenneth was warned to watch his language and told that his failure to do so would lead to a $500 fine. Nevertheless, Kenneth twice used the word "pissed" after the trial court's admonishment. Having warned Kenneth, the trial court, to avoid diminishment of its authority by allowing Kenneth's statements to go unpunished, the trial court found Kenneth in contempt and imposed the $1,000 fine. This was within the trial court's inherent authority to sanction Kenneth to control the proceedings before it. *Maldonado*, 476 Mich at 376.

Kenneth also argues that "pissed" is not a swearword. To "swear" is to "use profane or obscene language." *Merriam-Webster's Collegiate Dictionary* (11th ed). A swearword is defined as "a profane or obscene oath or word." *Id*. "Pissed" is slang and is often used in a vulgar manner, meaning "angry" or "irritated." *Id*. "Vulgar" is defined as "offensive in language" and "lewdly or profanely indecent." *Id*. Further, "profane" is defined as "obscene, vulgar." *Id*. Thus, while some may not consider "pissed" a typical swearword, because it is often used in a vulgar (profane) manner, it was within the trial court's discretion to determine that Kenneth's usage of the term constituted improper language in its courtroom. Accordingly, the trial court did not abuse its discretion when it imposed the $1,000 fine against Kenneth for his two statements that he was "pissed."

Kenneth also asserts that the trial court did not warn him "in advance that each swear word he used would result in a $500 fine." The trial court, however, stated: "The next time you use *a* curse word in my courtroom I'm fining you $500." When Kenneth stated that he did not "even remember saying it," the trial court responded, "Well I do, and I remember several from yesterday. If you do it again I'm charging you $500." Thus, a reasonable reading of the trial court's statement, that the next time Kenneth used "*a* curse word," he would be fined $500, was that each use of a curse word would result in a $500 fine. Indeed, in his own brief on appeal, Kenneth provided the following summary of events: "After saying the word 's**t' several times, the Trial Court instructed Kenneth De[B]lock that if he used another 'curse' word in her courtroom she would fine him $500 *for each offense*." Accordingly, Kenneth's assertion is without merit that he did not receive advance warning that the use of a curse word would result in a $500 fine per curse word.

Kenneth also argues that before the trial court "summarily issued the criminal contempt," it gave him "no time to respond, no opportunity to defend himself, and no assistance of counsel." But Kenneth's assertions have no basis in the record. Kenneth was instructed multiple times to watch his language and, when he did not do so, he was warned that any further inappropriate language would result in a $500 fine. Kenneth's failure to heed the trial court's warning and its imposition of the $1,000 fine occurred when Kenneth was on the stand. That is, he had the opportunity to respond and defend himself. And to the extent Kenneth claims he was denied the assistance of counsel, the trial court indicated that he "chose[] to be in pro se." Therefore, Kenneth's assertion that he was not given an opportunity to respond or defend himself, and was deprived of an attorney, is without merit.

## C. DUE PROCESS

To the extent Kenneth argues on appeal that the Zoom hearing deprived him of due process, he has waived that issue. "A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court."

*Holmes v Holmes*, 281 Mich App 575, 587-588; 760 NW2d 300 (2008). To allow a party to assign "error on appeal [to] something that []he deemed proper in the lower court" would "permit [a] [party] to harbor error as an appellate parachute." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

Kenneth refused to participate in a live hearing. Thus, the trial court ordered that the hearing would be held on Zoom. Although Kenneth stated it was the trial court's "responsibility to give [him his] civil rights . . . and to give me a live trial that you deny me of," that is contrary to Kenneth's statements in his trial brief, which clearly stated he refused to participate in a live trial. Accordingly, Kenneth has waived his objection on appeal to the fact that the hearing was held over Zoom. *Holmes*, 281 Mich App at 588.

## D. HEARSAY

Next, Kenneth argues that the admissible evidence at the evidentiary hearing did not support the trial court's imposition of the fines against him. Specifically, Kenneth asserts that the only evidence supporting a finding that he took estate property from the decedent's home was hearsay testimony from Dennis regarding statements made by Andy Baillargeon (Andy), the decedent's friend, to Dennis.[5] We agree that Dennis's testimony regarding Andy's statements constituted hearsay, but disagree with Kenneth that the other evidence did not support the trial court's imposition of the fines against him.

Generally, a trial court's decision whether to admit evidence is reviewed for an abuse of discretion, while any preliminary questions of law are reviewed de novo. *Mueller v Brannigan Brothers Restaurants & Taverns, LLC*, 323 Mich App 566, 571; 918 NW2d 545 (2018). "An abuse of discretion generally occurs only when the trial court's decision is outside the range of reasonable and principled outcomes, but a court also necessarily abuses its discretion by admitting evidence that is inadmissible as a matter of law." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016) (footnotes with citations omitted). "When an evidentiary

---

[5] Generally, an issue must be raised in or decided by the trial court for it to be preserved for appeal. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Moreover, "a party also need not preserve an objection to 'a finding or decision' made by the trial court . . . ." *Id*., quoting MCR 2.517(A)(7). "[I]ssue preservation requirements only impose a general prohibition against raising an issue for the first time on appeal." *Id*. Kenneth did not object to Dennis's testimony regarding Andy's statements about Kenneth taking property from the decedent's home. Thus, to the extent Kenneth raises an evidentiary challenge to the admission of Andy's statements on the basis of hearsay, this issue is unpreserved.

Unpreserved errors, however, are reviewed for plain error. *Total Armored Car Serv, Inc v Dep't of Treasury*, 325 Mich App 403, 412; 926 NW2d 276 (2018). "To establish an entitlement to relief based on plain error, the injured party must show (1) that an error occurred, (2) that the error was plain, and (3) that the plain error affects [its] substantial rights." *Id*. (quotation marks and citation omitted; alteration in original). "To merit relief, the injured party must show prejudice, i.e., that the error affected the outcome" of the proceedings. *Id*.

question involves a question of law, such as the interpretation of a statute or court rule, our review is de novo." *In re Utrera*, 281 Mich App 1, 15; 761 NW2d 253 (2008).

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is inadmissible unless it falls within an exception provided for by the rules of evidence. MRE 802.

At the November 12, 2020 evidentiary hearing, Dennis testified about statements Andy made to Dennis regarding seeing Kenneth take estate property from the decedent's home. According to Dennis, Andy was "very familiar with [the decedent's] items" and helped the decedent "at his flea market occasionally." Dennis testified that the decedent "wanted Andy to be in charge of liquidating" the decedent's "personal property because," as the decedent apparently said, "Andy knows my stuff better than anybody."

Dennis also testified that Andy reported to Dennis that Kenneth and Linda broke into the decedent's house on March 19, 2019, took items from the home, including musical instruments, and loaded the items into their two vehicles. Dennis further testified that on the morning of March 20, 2019, Andy called Dennis "confirm[ing] that he put a new lock on the door" of the decedent's house. Later that day, however, Andy called Dennis again, this time telling Dennis, in Dennis's words, that "Ken and Linda had broken into the house again" and "continued to remove personal property." After Dennis called his attorney to "inform[] her of the break in," Andy called Dennis again to "inform [Dennis] that Ken[neth] had torn off a new lock and had replaced the main locks with his own lock." At no point during Dennis's testimony regarding Andy did Kenneth object to Dennis's testimony as hearsay.

Dennis's testimony regarding Andy's statements is hearsay. Dennis's testimony contained out-of-court statements offered for the truth of the matter asserted, i.e., to prove that Kenneth took estate property from the decedent's home. Thus, to the extent the trial court relied on *Dennis's* testimony regarding Andy's statements, it plainly erred in doing so. However, the trial court was also provided a copy of an affidavit from Andy that included the same information Dennis testified about. That is, Andy's affidavit indicates that when he went to the decedent's house to pick up mail, he saw Kenneth walk out of the house with musical instruments in his arms, "[h]is wife walked out behind him," and the two had "2 vehicles at the property, doors open, [with] items from the house inside the cars." Thus, while Dennis's testimony regarding Andy's statements may have been inappropriately admitted, any error was harmless as Andy's affidavit was submitted to the trial court as part of the filings before it at the evidentiary hearings. See *Nahshal v Freemont Ins Co*, 324 Mich App 696, 713; 922 NW2d 662 (2018).

Additionally, contrary to Kenneth's assertions, evidence other than Andy's statements was presented and demonstrated that Kenneth took estate property from the decedent's home. First, Kenneth admitted he was still in possession of several items from the estate, including Elvis paraphernalia, a reclining chair, and hobnail glassware, and would not be returning them because they were "of [his] ownership." Second, Karen testified that when she, Kenneth, and Linda were at Karen's storage unit in September 2019, Kenneth admitted to having estate assets in his possession, despite telling the trial court that he did not have any items in his possession. Additionally, when Kenneth asked Karen whether he had the chance to retrieve childhood items

that he asked for, Karen stated, "Yeah, you kicked in the door and went in all week long and took what you wanted." Karen also testified that Kenneth broke into her truck several times and took items that were apparently from the estate that she was transporting. Further, Karen testified that when she went to the Parkway garage with Dennis, she saw "several items" in the garage "from the estate," including boxes of "motor manuals" and records. And when Kenneth called Karen as a witness, she provided extensive testimony indicating that when she initially went into the decedent's home, "everything[]" was still in the house, but "the next day we go in there and there's nothing there and your trailer's parked in the driveway[.] You emptied the house. You're the only one that's gotten anything."

Levi Pedlar, the decedent's next door neighbor, also testified that he met Kenneth outside the decedent's home and learned that the decedent had passed away. Although Pedlar stated he did not see Kenneth with any items in his hands, Kenneth, Linda, and their son were at the decedent's house for several days after Pedlar initially met them. Pedlar also testified that he saw Kenneth "hop[] the fence that Dennis had locked," "pulled on the side door to see if it was locked" and "tr[ied] to get in, and then he had walked around the backyard." Thereafter, Pedlar saw Kenneth "come back over the fence" and begin "rummaging around" in a "giant dumpster in the driveway . . . ." Pedlar's testimony supports the testimony of Karen and Dennis that Kenneth took estate property shortly after the decedent's death. Accordingly, there was substantial evidence demonstrating that Kenneth took estate property from the decedent's house. Any error from admission of Dennis's testimony regarding Andy's statements did not prejudice Kenneth. Thus, Kenneth is not entitled to relief. *Total Armored Car Serv, Inc*, 325 Mich App at 412.

## E. CONCLUSION

We affirm in part and vacate in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs may be taxed, as neither party prevailed in full.

/s/ Kirsten Frank Kelly
/s/ David H. Sawyer
/s/ Michael F. Gadola