*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMANDA GREGORY,

Plaintiff-Appellant,

v

CHRISTOPHER S. GREGORY, also known as
CHRISTOPHER S. ROSEN,

Defendant-Appellee.

UNPUBLISHED
January 25, 2024

No. 363988
Wayne Circuit Court
Family Division
LC No. 16-109935-DM

Before: CAVANAGH, P.J., and RICK and PATEL, JJ.

PER CURIAM.

Plaintiff appeals as of right an order directing her to pay defendant $23,682.50 in attorney fees after the trial court found plaintiff in contempt of court for unilaterally enrolling the children in a new school without defendant's approval, in violation of the parties' custody agreement. We affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

This appeal stems from a dispute regarding which school district the parties' minor children should attend, though the issues raised on appeal relate to sanctions imposed for plaintiff's contempt of court. The parties share joint legal custody of the children per a 2017 judgment of divorce. The children reside primarily with plaintiff. In the most recent custody order, defendant was awarded parenting time from Friday after school or daycare until Monday morning on alternating weekends and overnight parenting time every other Wednesday. During the summer, the parties exercised week-on, week-off parenting time.

In August 2021, defendant filed an emergency motion alleging that plaintiff relocated to Monroe and unilaterally enrolled the children at Triumph Academy (Triumph), a public charter school in Monroe, over defendant's objection. Prior to plaintiff's move, the children attended school within the Riverview Community School District (RCSD). Defendant asked the court to enter an ex parte order requiring the children to remain in the RCSD. The trial court declined to grant relief on an ex parte basis, but allowed the matter to be scheduled for a hearing at a later date. Following the hearing, the trial court ordered that the children be immediately reenrolled in the

RCSD, and an evidentiary hearing was scheduled. The RCSD, however, would not allow the children to be reenrolled because neither parent nor the children resided in the district.

The evidentiary hearing was held over the course of three days in June and July 2022. In an opinion and order entered following the hearing, the trial court ruled that it was in the children's best interests to remain in Monroe schools, and that conclusion is not challenged in this appeal. Rather, plaintiff takes issue with the following portion of the trial court's opinion and order:

> However, the Court finds Plaintiff violated the tenants [sic] of joint legal custody set forth in the Judgment of Divorce. It is quite clear to the Court Plaintiff unilaterally made the decision to enroll the children in the Monroe School district without the express approval of the Defendant.
>
> The Court also believes Plaintiff to be aware that when she unenrolled the children in the Riverview School district, there would not be a possibility for the children to be enrolled once again due to her move to Monroe and the sale of the marital home. Plaintiff is intelligent enough to understand the consequences of her actions at that time and therefore served her own best interests instead of the minor children. Thus, Plaintiff is to be held in contempt. However, the Court needs Defendant Counsel to submit billing information in regards to the Show Cause and any Motions filed in direct correlation with the Show Cause before a final amount of attorney's fees can be awarded.

Defendant moved for reconsideration, which was subsequently denied. In the same order denying defendant's motion, the trial court stated that plaintiff was required to pay $23,682.50 in attorney fees, noting that the court found "the invoice which Defendant's counsel submitted to the Court to be a fair and equitable representation of expenses incurred by Defendant as a result of Plaintiff's actions." This appeal followed.

## II. ANALYSIS

### A. CONTEMPT PROCEEDINGS

Plaintiff challenges the trial court's contempt adjudication on multiple grounds, primarily arguing that she lacked notice and an opportunity to defend because the trial court found her in contempt sua sponte, did not specify whether the proceedings were civil or criminal, and did not indicate whether the contempt was direct or indirect. Plaintiff also claims that the trial court's factual findings were clearly erroneous and unsupported by a preponderance of the evidence. We disagree.

We review a trial court's decision to hold a party in contempt for an abuse of discretion, which occurs when "the trial court's decision is outside the range of principled outcomes." *ARM v KJL*, 342 Mich App 283, 293; 995 NW2d 361 (2022) (quotation marks and citation omitted). A trial court also abuses its discretion "when it makes an error of law." *TM v MZ (On Remand)*, 326 Mich App 227, 235-236; 926 NW2d 900 (2018) (quotation marks and citation omitted). Factual findings underlying the contempt ruling are reviewed for clear error. *ARM*, 342 Mich App at 293. "Clear error exists when the reviewing court is left with a definite and firm conviction that a

mistake has been made." *DeGeorge v Warheit*, 276 Mich App 587, 591; 741 NW2d 384 (2007) (quotation marks and citation omitted). Questions of law implicated by the trial court's decision, such as whether a party was afforded due process, are reviewed de novo. *TM*, 326 Mich App at 236; *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009). Whether this Court has jurisdiction to decide this issue is a question of law reviewed de novo. *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 708-709; 742 NW2d 399 (2007).

Preliminarily, plaintiff acknowledges a potential jurisdictional defect that must be decided before reaching the merits of her claim of error. See *O'Connell v Dir of Elections*, 316 Mich App 91, 100; 891 NW2d 240 (2016) (recognizing that courts have an ongoing duty to examine their own jurisdiction). Pursuant to MCR 7.203(A)(1), this Court has jurisdiction over an appeal of right filed by an aggrieved party from "[a] final judgment or final order of the circuit court, or court of claims, as defined in MCR 7.202(6) . . . ." Generally, "an order finding a party in civil contempt of court is not a final order for purposes of appellate review." *In re Moroun*, 295 Mich App 312, 329; 814 NW2d 319 (2012). Conversely, "an order finding a party in criminal contempt of court and sanctioning the party is a final order from which the contemnor may appeal as of right." *Id*. As plaintiff points out, the trial court did not identify whether its contempt adjudication was for civil or criminal contempt. It is thus unclear whether the order was a final order appealable by right.

Plaintiff contends that even if the contempt adjudication is determined to be civil in nature, her challenges are still properly before this Court because an appellant who has filed a claim of appeal from a final order is "free to raise any issue on appeal, including issues related to other orders in the case." *Dean v Tucker*, 182 Mich App 27, 31; 451 NW2d 571 (1990).[1] This aspect of plaintiff's argument is unpersuasive, as it is contrary to MCR 7.203(A)(1). It is true that a properly perfected claim of appeal from some final orders will open the door to challenges concerning earlier nonfinal orders. See, e.g., *Green v Ziegelman*, 282 Mich App 292, 301 n 6; 767 NW2d 660 (2009); *Bonner v Chicago Title Ins Co*, 194 Mich App 462, 472; 487 NW2d 807 (1992). However, MCR 7.203(A)(1) provides that "[a]n appeal from an order described in MCR 7.202(6)(a)(*iii*)-(*v*) is limited to the portion of the order with respect to which there is an appeal of right." Plaintiff filed a claim of appeal from the trial court's order denying defendant's motion for reconsideration and ordering plaintiff to pay $23,682.50 in attorney fees. The jurisdictional statement in plaintiff's brief on appeal, as well as the jurisdictional checklist filed with her claim of appeal, assert that this Court has jurisdiction over the appeal under MCR 7.202(6)(a)(*iv*). That court rule includes within the definition of a final judgment or final order from a civil case "a postjudgment order awarding or denying attorney fees and costs under court rule or other law[.]" MCR 7.202(6)(a)(*iv*). Because the order denying reconsideration was entered postjudgment in a civil case and involved the award of attorney fees, it is a final order appealable by right under MCR 7.202(6)(a)(*iv*) and MCR 7.203(A)(1). However, pursuant to MCR 7.203(A)(1), a claim of appeal from such an order is "limited to the portion of the order with

---

[1] Although this Court is not strictly bound by its published decisions predating November 1, 1990, such decisions are "nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

respect to which there is an appeal of right." In other words, this Court's jurisdiction is limited to issues pertaining to the award of attorney fees and does not extend to review of other orders, as it would if plaintiff had claimed an appeal from an order deemed final under MCR 7.202(6)(a)(*i*) or (*ii*).

Still, plaintiff's arguments regarding the contempt adjudication are properly within this Court's limited jurisdiction for a different reason, even if the contempt is deemed civil in nature. In *Pioneer State Mut Ins Co*, 330 Mich App 138, 142-143; 946 NW2d 812 (2019), this Court declined to review issues unrelated to the award of attorney fees for the same reason outlined above, i.e., because the claim of appeal stemmed from an award of attorney fees and was therefore limited to that issue by MCR 7.203(A)(1). After acknowledging the jurisdictional limitation, the Court found no error in the trial court's decision to award attorney fees on the basis of the defendants' pursuit of a frivolous defense. *Id*. at 146-147. Thus, we infer from *Pioneer State Mut Ins Co* that the underlying basis for the attorney fee award is within the scope of the Court's limited jurisdiction. Here, because the trial court's contempt finding was the basis for its award of attorney fees, that determination is within this Court's jurisdiction, just as the frivolity issue was in *Pioneer State Mut Ins Co*. Thus, this Court has jurisdiction to hear plaintiff's appeal.

Turning to plaintiff's substantive claims of error, plaintiff argues that the trial court erred by raising the issue of contempt of its own volition, without a show-cause motion having been filed by defendant. Plaintiff does not directly dispute the trial court's authority to raise a contempt issue in this manner. Instead, she reasons that the procedure left her without adequate notice or opportunity to defend, thus implicating her constitutional right to due process. However, for reasons that are unclear from our review, the electronic record transmitted to this Court is missing certain documents. For instance, the trial court's register of actions indicates that a default judgment of divorce was entered on February 16, 2017. It is beyond dispute that the judgment was entered on that date, as it has been produced by plaintiff with her appellate brief and was attached to various motions filed after its entry. Yet for some reason, the judgment of divorce is not included as a separately filed document within the trial court's record. As a further example of the deficiencies in the record, the trial court's opinion and order following the evidentiary hearing refers to an order entered sometime after April 8, 2022, but no such order is reflected in the register of actions or appears in the electronic record. The same opinion and order likewise mentions proposed factual findings and legal conclusions having been filed by both parties, but only defendant's filing is reflected in the register of actions and electronic record. Thus, it appears that the record maintained by the trial court in this case and subsequently transmitted to this Court for appellate review is incomplete.

That said, the record that *is* available makes clear that the trial court did not raise the contempt issue on its own initiative. In its opinion and order following the evidentiary hearing, the trial court summarized the proceedings that led to the hearing. It noted that plaintiff had "a pending Show Cause Motion against her at this time for violation of the joint legal custody provisions contained within the Judgment of Divorce." Consistent with the trial court's summary, a notice of hearing filed by plaintiff several months before the evidentiary hearing purported to schedule a hearing for several matters, including "Defendant's Motion for Order to Show Cause for Violation of Joint Legal Custody Order Dated February 17 [sic: 16], 2017." The evidentiary hearing regarding the children's school was to take place on the same date, but did not ultimately begin until approximately six weeks after the date appearing on the notice. Even more telling is

the fact that plaintiff filed a written response to defendant's show-cause motion alleging a violation of joint legal custody.

Moreover, at the beginning of the evidentiary hearing, the parties discussed an unrelated show-cause motion, resulting in the trial court finding plaintiff in contempt and granting attorney fees to defendant in the amount of $500. After that matter was settled, the following exchange occurred:

> *The Court*: All right. We're ready to move forward?
>
> [*Plaintiff's Counsel*]: Yes, Your Honor. The next issue is the motion but it goes hand-in-hand with the actual evidentiary hearing. So are you going to take those all as one or how would you like to proceed on that?
>
> *The Court*: I would rather take then [sic] as one unless you guys have any other thoughts on it. . . .
>
> [*Defendant's Counsel*]: (Interposing) I would prefer to take the show cause separately because even though they are relevant issues, it's a very pointed show cause. And I think that what we're alleging is clear and succinct. And it would be easier to get this done quickly than incorporate it into everything else that goes on today.
>
> *The Court*: [Plaintiff's counsel], do you have an issue with that? Do you want to just separate and proceed? I think that's probably a better idea. So let's move forward with the show cause.
>
> [*Plaintiff's Counsel*]: The reason I would hesitate to do that is because the witnesses for the evidentiary hearing, some of them are the same witnesses for the show cause.

The trial court subsequently agreed to begin the evidentiary hearing and "combine both" so as to avoid needlessly repetitive testimony.

It is abundantly clear from the record, incomplete as it is, that the trial court's contempt adjudication did not arise out of the blue, as plaintiff suggests. At minimum, defendant initiated the show-cause motion alleging that plaintiff violated the joint legal custody provision in the judgment of divorce. Defendant served plaintiff with the motion and provided a copy of it to the trial court, even if it was not properly docketed or filed by the clerk's office. Plaintiff was plainly aware of the show-cause motion. Had she not been aware of it, she could not have filed a written response. It is also obvious that she knew the show-cause motion would be addressed at the evidentiary hearing. It was her own attorney who first mentioned the motion and proposed that it be decided in conjunction with the motions regarding the children's school enrollment. Thus, regardless of the unexplained gaps in the electronic record, we reject the notion that plaintiff was unaware that she was facing the possibility of contempt sanctions, or that she was deprived of an opportunity to present a defense.

Plaintiff next takes issue with the trial court's failure to determine whether the contempt proceedings were civil or criminal in nature. As plaintiff notes in her brief on appeal, this Court has stated that a person "charged with contempt is entitled to be informed . . . whether the contempt proceedings are civil or criminal . . . ." *DeGeorge*, 276 Mich App at 592. That did not happen here, and without the missing show-cause motion, there is no way to determine whether the motion itself identified the nature of the contempt allegation. *Ann Arbor v Danish News Co*, 139 Mich App 218; 361 NW2d 772 (1984) appears to be the first case to declare the contemnor's entitlement to be informed of the civil or criminal nature of the contempt proceedings, and guides our analysis here. In *Ann Arbor*, two individuals were convicted of contempt for violating an injunction and argued on appeal that the trial court was without authority to impose criminal penalties when the motion and order to show cause did not clearly identify whether the contempt proceedings were criminal in nature. *Id*. at 222, 231. Rejecting that claim of error, the *Ann Arbor* Court reasoned:

> *People v Johns*, 384 Mich 325; 183 NW2d 216 (1971), holds that criminal contempt is a crime in the ordinary sense and that the proceedings must comport with the standard of due process applicable in all criminal proceedings. A defendant cannot be found guilty of criminal contempt when the proceedings lacked any semblance of a criminal trial, the sentence had elements of both civil and criminal contempt and defendant could have reasonably expected that he was being held in civil contempt.

> In the instant case, the court found defendants guilty of both civil and criminal contempt and, arguably, the pleadings could be interpreted to be either civil or criminal in nature. However, prior to the hearing, the store had been closed, eliminating any possibility of civil contempt. The response filed by [the attorney for one of the defendants] characterized the proceedings as being criminal in nature. Moreover, defendants filed a demand for jury trial. There would be no right to a jury trial in any civil contempt proceeding. We held in *Fraternal Order of Police, Lodge # 98 v Kalamazoo County*, 82 Mich App 312; 266 NW2d 805 (1978), that one who comes into court reasonably believing that he is about to be tried for civil contempt cannot be punished for criminal contempt at the conclusion of the hearing. A defendant charged with contempt is entitled to be informed as to whether the contempt proceedings filed against him are civil or criminal. In the instant case, where Shoultes and his counsel clearly believed from the pleadings and the factual context of the case that they were about to participate in a criminal contempt hearing, we believe that there was no denial of due process. However, we caution the bar that where contempt proceedings are initiated, the better practice would be to clearly define in the pleadings the nature of the relief requested. The failure of [the plaintiff's] Attorney to do so in this case required the above analysis which would not have been necessary had counsel proceeded in a less ambiguous fashion. [*Id*. at 231-232.]

Notably, in declaring a person's entitlement "to be informed as to whether the contempt proceedings filed against him are civil or criminal," *id*. at 232, the *Ann Arbor* Court did not squarely place the duty to inform the alleged contemnor of the nature of the proceedings on the trial court. Rather, the procedural shortcoming was seemingly imputed to the party seeking the contempt adjudication. See *id*. (warning that clearly defined pleadings are the "better practice"

when initiating contempt proceedings). Later, the *DeGeorge* Court opined that the contemnor had sufficient notice of the criminal nature of the proceedings when the title of the underlying motion specifically referred to criminal contempt. *DeGeorge*, 276 Mich App at 593. In advancing her claim of error, plaintiff takes issue with the trial court's failure to explicitly state whether the contempt charge was criminal or civil, but the foregoing authorities do not impose such an obligation on the trial court, even if doing so might be a "best practice."[2]

Yet the distinction between civil and criminal contempt is important because it dictates the procedural safeguards that must be afforded to satisfy constitutional due process principles. *In re Contempt of Dougherty*, 429 Mich 81, 91; 413 NW2d 392 (1987); *Porter v Porter*, 285 Mich App 450, 456-457; 776 NW2d 377 (2009). An individual accused of criminal contempt has procedural rights comparable, if not identical, to those available in a typical criminal prosecution. *Porter*, 285 Mich App at 456. In contrast, the accused in civil contempt proceedings is entitled only to "rudimentary due process, i.e., notice and opportunity to present a defense, and the party seeking enforcement of the court's order bears the burden of proving by a preponderance of the evidence that the order was violated." *Id*. at 457. In some ways, all contempt proceedings can arguably be characterized as quasi-criminal, in that they can result in imprisonment for failure to comply with a court order. *Dougherty*, 429 Mich at 90. But the " 'character and purpose' " of the punishment imposed often serves to differentiate between civil and criminal contempt. *Id*. at 92-93, quoting *Gompers v Buck's Stove & Range Co*, 221 US 418, 441; 31 S Ct 492; 55 L Ed 797 (1911).

Here, as punishment for being held in contempt, plaintiff was ordered to pay the attorney fees defendant incurred in connection with his show-cause motion and any other motion "filed in direct correlation with" the show-cause motion. Thus, we conclude that the contempt action was civil in nature. Rather than imprisonment or some other punitive measure, the contempt charge was primarily designed to reimburse defendant for costs arising from plaintiff's violation of the custody provisions set out in their judgment of divorce. *Porter,* 285 Mich App at 455. In other words, it was a compensatory civil sanction. *Id*. at 455-456. That it also had a punitive effect by reprimanding plaintiff for violating a court order is not dispositive. *Id*. at 456. And because the contempt proceedings were apparently civil, there can be no suggestion that plaintiff failed to appreciate the extent of her due-process rights, which were the same as were otherwise available to her in this civil dispute.

Plaintiff next contends that the trial court's failure to expressly designate the nature of the proceedings left her unable to properly prepare or present a defense. This assertion lacks merit. As noted earlier, ample record evidence indicates that plaintiff had a copy of defendant's show-cause motion well in advance of the evidentiary hearing, as she filed her response to the motion more than three months before the hearing began. Further, it was plaintiff's own attorney who asked to combine the evidentiary hearing regarding the school issue with defendant's show-cause motion, noting that they went "hand-in-hand" with each other and involved some of the same

---

[2] Plaintiff makes no complaint as to whether defendant's show-cause motion provided sufficient notice, presumably because she has neglected to acknowledge its existence.

witnesses. On this record, it is apparent that plaintiff was prepared to proceed on both matters and went so far as to encourage the trial court to resolve both issues on the basis of a single record.[3]

Plaintiff also offers a cursory argument regarding the trial court's failure to determine, as a threshold matter, whether the contempt was direct or indirect. The only authority plaintiff cites regarding this theory is MCL 600.1711, which states:

> (1) When any contempt is committed in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both.

> (2) When any contempt is committed other than in the immediate view and presence of the court, the court may punish it by fine or imprisonment, or both, after proof of the facts charged has been made by affidavit or other method and opportunity has been given to defend.

Subsection (1) describes what is commonly known as direct contempt, while subsection (2) describes indirect contempt. *In re Contempt of Murphy*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 360560); slip op at 1-2. MCL 600.1711 merely dictates that direct contempt may be punished summarily—that is, without a separate hearing before imposition of a sanction— while indirect contempt requires additional procedures. *Id*. at ___; slip op at 1-2. Nothing in the statute requires the trial court to identify whether the contempt was direct or indirect.

Further, unlike the distinction between civil and criminal contempt, it is rarely challenging to determine if allegedly contemptuous acts were direct or indirect. Plaintiff was found in contempt for unilaterally enrolling the children at Triumph without defendant's approval, contrary to the court-ordered joint legal custody arrangement. That activity was not committed in the trial court's immediate presence, and thus involved indirect contempt. Plaintiff does not suggest that the trial court summarily punished this act, nor would such a suggestion be supported following a three-day evidentiary hearing at which plaintiff's actions were fully explored.

In her final claim of error regarding the contempt adjudication, plaintiff argues that the trial court's factual findings were clearly erroneous and unsupported by a preponderance of the evidence. First, plaintiff maintains that the trial court did not recognize "that school enrollment of the children was an inevitable issue that would have had to be addressed by the trial court," considering plaintiff's relocation and the parties' inability to agree on an appropriate school. This point is of little significance, since the trial court sanctioned plaintiff for enrolling the children in a new school without defendant's approval, not for forcing the trial court to determine which school would serve the children's best interests.

---

[3] "A party may not claim as error on appeal an issue that the party deemed proper in the trial court because doing so would permit the party to harbor error as an appellate parachute." *Bates Assoc, LLC v 132 Assoc, LLC*, 290 Mich App 52, 64; 799 NW2d 177 (2010). Thus, even if we were left with any doubt as to whether plaintiff had an opportunity to prepare and present a defense to the show-cause motion, plaintiff's attorney waived review of this issue. *Id*.

Focusing more specifically on the trial court's factual findings, plaintiff next contends that there was no evidence to support the trial court's belief that plaintiff knew the children could not be reenrolled in the RCSD after they had been unenrolled. Plaintiff points to her own testimony that she did not take affirmative steps to unenroll the children and that the unenrollment happened automatically when she enrolled the children at Triumph. In essence, plaintiff argues that in the absence of evidence showing that she affirmatively acted to unenroll the children, it cannot be inferred that she did so knowing that they would be unable to return to the RCSD. Plaintiff doubles down on this argument by asserting that there was no evidence of her beliefs regarding the secondary effects of enrolling the children at Triumph. It is well settled that a fact may be established with circumstantial evidence and reasonable inferences arising from the evidence. See, e.g., *Firemen's Ins Co v Sterling Coal Co*, 348 Mich 564, 569; 83 NW2d 319 (1957); *Yoost v Caspari*, 295 Mich App 209, 226; 813 NW2d 783 (2012). We therefore find this argument unpersuasive.

Semantics aside, the trial court's point was that plaintiff knew that once she pulled the trigger on the change of schools, it could not be undone. Plaintiff testified that, by her understanding, the children could not continue attending the RCSD after they relocated to Monroe because neither parent was a Riverview resident at that point. Thus, it is clear that she knew residency in Riverview was essential to the children's enrollment eligibility. Yet the record demonstrates that plaintiff relocated with the children over the summer in 2020 and the children were still able to attend the RCSD's virtual program for the entire 2020 to 2021 school year, despite not having in-district residency with either parent. Regardless of the propriety of this arrangement, the trial court could infer that plaintiff, who is herself a licensed attorney with at least some experience in family law matters, understood that once both parents moved out of the district and the children were enrolled elsewhere, it would be difficult, if not impossible, for them to return to the RCSD.

Plaintiff next takes issue with the trial court's finding that her unilateral actions "served her own best interests instead of the minor children," which plaintiff opines was at odds with the trial court's ultimate conclusion that the children should continue to attend school in Monroe. We see no disconnect between these findings. The former focused on plaintiff's motives at the time she enrolled the children at Triumph, while the latter focused on what was best for the children after they had already completed a full year of education at Triumph. Stability and continuity goals supported the decision not to disturb that arrangement.

Lastly, plaintiff emphasizes that defendant engaged in similar unilateral activities that could be viewed as violating joint legal custody. This point is irrelevant to the propriety of the trial court's contempt findings and decision because plaintiff never initiated show-cause proceedings asking the court to find defendant in contempt. For the reasons explained earlier, it is plain that defendant did just that, thereby placing the question of *plaintiff*'s compliance with the divorce judgment before the court. Even if defendant's compliance was properly before the trial court as well, plaintiff has offered no authority suggesting that her own violation of the joint legal custody provision must be excused on the basis of later unilateral decisions made by defendant. By failing to support this theory with pertinent, supporting authority, plaintiff abandoned review of this aspect of her claim of error. *In re Spears*, 309 Mich App 658, 674-675; 872 NW2d 852 (2015).

## B. ATTORNEY FEES

Plaintiff also argues that the trial court's award of attorney fees was improperly entered without record evidence, without a hearing, and without following the procedures for vetting the reasonableness of the claimed fees. On this point, we agree.

This Court reviews an award of attorney fees for an abuse of discretion, which occurs "when the trial court's decision is outside the range of reasonable and principled outcomes." *Pioneer State Mut Ins Co*, 330 Mich App at 145 (quotation marks and citation omitted). A trial court's decision regarding the necessity of an evidentiary hearing before awarding attorney fees is likewise reviewed for an abuse of discretion. *Kernen v Homestead Dev Co*, 252 Mich App 689, 691; 653 NW2d 634 (2002). Factual findings underlying the award are reviewed for clear error. *Pioneer State Mut Ins Co*, 330 Mich App at 145. "A decision is clearly erroneous when, although there may be evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *Id*. at 145-146 (quotation marks and citation omitted).

MCL 600.1721 authorizes the trial court to order a person who commits contempt of court to indemnify a person who sustains "actual loss or injury" as a result of the misconduct. *Taylor v Currie*, 277 Mich App 85, 100; 743 NW2d 571 (2007). Additionally, this Court has held that "[t]he sum required by MCL 600.1721 may include attorney fees that occurred as a result of the other party's contemptuous conduct." *Id*. (quotation marks and citation omitted). Thus, because the trial court did not err by finding plaintiff in contempt for violating the joint legal custody provision of the parties' divorce judgment, it was proper to order plaintiff to pay defendant's attorney fees.

Even so, defendant bore the burden of proving "the amount of the loss sustained" in order to recover under MCL 600.1721. *In re Contempt of Rochlin*, 186 Mich App 639 651; 465 NW2d 388 (1990). See also *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 281 n 45; 884 NW2d 257 (2016) (noting that burden of proving reasonableness of attorney fees recoverable under MCL 500.3148(1) rests with party requesting fees). Defendant attempted to satisfy this burden by having his attorney informally submit "billing information" to the presiding judge by e-mail. Following the same practice of informal communications with the judge's chambers, plaintiff's attorney asked for an opportunity to file a response before the court determined the amount of attorney fees to award. That request was initially approved by the judge's staff, only to be revoked after defendant's attorney also sought permission to respond to any objections that plaintiff might have.

Generally speaking, an evidentiary hearing should be held when a party required to pay attorney fees challenges the amount claimed, although such a hearing may be unnecessary "if the parties created a sufficient record to review the issue[.]" *Kernen*, 252 Mich App at 691. It is impossible to determine on the existing record how the trial court determined the amount of attorney fees to award or whether the amount ordered by the trial court was within the range of reasonable and principled outcomes. The billing information submitted by defendant is not part of the record, and the trial court stated only that it found the invoices "to be a fair and equitable representation of expenses incurred by Defendant as a result of Plaintiff's actions." In the absence of a record that facilitates meaningful appellate review, we must vacate the trial court's order to the extent it directed plaintiff to pay $23,682.50 in attorney fees. See, e.g., *Souden v Souden*, 303

Mich App 406, 414-417; 844 NW2d 151 (2013) (remanding for an evidentiary hearing on the issue of reasonable attorney fees after the trial court failed to consider the contract requiring payment of fees, factors governing reasonableness of fees, or address opposing party's challenges to sufficiency of bills and reasonableness of charges).

## III.  CONCLUSION

We are unpersuaded that the trial court erred with respect to its contempt finding, but agree that the trial court's order awarding attorney fees must be vacated because the record is insufficient to facilitate meaningful appellate review.  Accordingly, we affirm the trial court's August 26, 2022 order finding plaintiff in contempt, vacate the portion of the October 18, 2022 order directing plaintiff to pay $23,680.50 in attorney fees, and remand for further proceedings concerning the amount of attorney fees defendant may recover for plaintiff's contempt.  We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Michelle M. Rick
/s/ Sima G. Patel